Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Ogonna M. Atamoh, Esq. (NV Bar No.7589)
Email: oatamoh@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
***Attorneys for Waldemara Martin and Leandro
Valentim – putative class representatives and those
similarly situated***

E-filed on: May 3, 2014

Robert J. Bonsignore, Esq.
(NH Bar No. 21241) *Pro Hac Pending*
Email: rbonsignore@classaction.us
BONSIGNORE, LLC
193 Plummer Hill Road
Belmont, New Hampshire 03220
Telephone:    781/856-7650

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br><br>        Debtor. | Case No. BK-S-14-12524-ABL<br>Chapter 11 |
| WALDEMARA MARTIN AND LEANDRO VALENTIM – PUTATIVE CLAIMS REPRESENTATIVES AND THOSE SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>        v.<br><br>TELEXFREE, INC., f/k/a COMMON CENTS COMMUNICATIONS, INC.; TELEXFREE, LLC; TELEXFREE FINANCIAL, INC.; TELEXELECTRIC, LLLP; TELEX MOBILE, HOLDINGS, INC.; JAMES M. MERRILL; CARLOS N. WANZELER; ; STEVEN M. LABRIOLA; JOSEPH H. CRAFT, a/k/a JOE H. CRAFT; CRAFT FINANCIAL SOLUTIONS, LLC; CARLOS COSTA; GERALD P. NEHRA, individually and doing business as LAW OFFICES OF NERHA AND WAAK; GERALD P. NEHRA ATTORNEY AT LAW, PLLC; RICHARD W. WAAK, individually and doing business as LAW OFFICES OF NERHA AND WAAK; RICHARD W. WAAK, ATTORNEY AT LAW, PLLC; TD BANK, NA; CITIZENS FINANCIAL GROUP, INC.; CITIZENS BANK OF MASSACHUSETTS; FIDELITY CO-OPERATIVE BANK, doing business as FIDELITY BANK; MIDDLESEX SAVINGS BANK; GLOBAL PAYROLL GATEWAY INC.; INTERNATIONAL PAYOUT SYSTEMS, | Adv. No.<br><br>**CLASS ACTION COMPLAINT FOR, INTER ALIA, VIOLATIONS OF STATE AND FEDERAL SECURITIES LAWS**<br><br><br>**DEMAND FOR TRIAL BY JURY** |

10235-01/1302119_2.doc

1   INC.; PROPAY, INC., doing business as
    PROPAY.COM,; BANKS DOE; DOE INSIDE
2   PROMOTERS; CREDIT PROCESSORS DOE
    and PARALEGAL DOE,
3
                       Defendants.
4

5   **CLASS ACTION COMPLAINT FOR, INTER ALIA, VIOLATIONS OF STATE
    AND FEDERAL SECURITIES LAWS**
6

7        Plaintiffs, Putative Class Representatives WALDEMARA MARTIN and LEANDRO

8   VALENTIM, on behalf of themselves and all others similarly situated (hereafter "Plaintiffs")

9   bring this class action against Defendants TELEXFREE, INC., f/k/a COMMON CENTS

10  COMMUNICATIONS, INC., TELEXFREE, LLC, TELEXFREE FINANCIAL, INC.,

11  TELEXELECTRIC, LLLP, TELEX MOBILE, HOLDINGS, INC., (collectively referred to

12  herein as "TelexFree") and the other named Defendants and Doe Defendants.

13                          **INTRODUCTION**

14       1.      Plaintiffs seek compensation for economic loss sustained as a result of

15  Defendants' conduct in carrying out an unlawful Ponzi pyramid scheme that included, *inter alia*,

16  Defendants' fraudulent unregistered offer and sale of securities in the form of unregistered

17  investment contracts constituting securities.

18       2.      During all times relevant to this complaint, TelexFree uniformly held itself out as

19  a "multi-level marketing" company systematically selling local and international telephone

20  service plans that use "voice over internet protocol" ("VoIP") technology through so-called

21  "Promoters."[1]

22       3.      The TelexFree VoIP was not patented or proprietary.

23       4.      The TelexFree VoIp offered nothing more than what was otherwise available for

24  free through other Internet providers such as Skype.

25       5.      In reality, TelexFree's offer and sale of investment contracts constituted a

26  pyramid-type Ponzi scheme (the "Pyramid Ponzi Scheme").

27  ───────────────────
    [1] Merriam-Webster's Dictionary defines a "promoter" as a person or organization that helps something to happen,
28  develop, or increase.

                              - 2 -

[10235-01/1302119_2.doc]

6.     To carry out their unlawful enterprise, TelexFree and their officers, agents, servants and employees sold fraudulent unregistered securities to the Putative Class Representatives and to the members of the class the Representatives seek to represent.

7.     Telexfree sold unregistered securities in twenty-one states and internationally from its offices in Marlborough, Massachusetts.[2]

8.     TelexFree also maintained a post office box in an unnamed mini mart and smoke shop located in a strip mall in Las Vegas, Nevada.

9.     TelexFree maintained no sales force or sales support in Nevada at any time relevant to the complaint.

10.     The contract under which TelexFree claims to invoke the application of Nevada law is illegal and void as a matter of law.

11.     TelexFree's unregistered securities were deceptively and uniformly identified to members of the putative class as "memberships."

12.     TelexFree guaranteed returns of 200% or more per year.

13.     In exchange for copying and placing duplicative and pre-written TelexFree ads on internet sites – a passive process that alone generates no revenue and requires essentially no effort on the part of the investors – and for recruiting other investors to pay the membership fees, TelexFree falsely held out that its investors, or "Promoters," could receive significant returns of over 200% annually.

14.     TelexFree uniformly and systematically did not require Promoters to sell its VoIP product in order to qualify for payments prior to March 9, 2014.

---

[2] Because all sales were processed through their Massachusetts office, Massachusetts state law applies including MGL 110A, Sec. 410, MGL. 110A, Sec. 410(b) and MGL 93A.

- 3 -

15.     TelexFree's scheme constitutes an unlawful pyramid scheme because the proceeds from the sale of TelexFree's VoIP product alone could not sustain the massive pay structure.

16.     To keep TelexFree's Pyramid Ponzi Scheme liquid, a constant influx of new participants was required.

17.     On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "a stop to TelexFree's business operations, including the registration of new affiliate investors, acceptance of new investments and paying any returns owed on existing affiliate investments."[3]

18.     At all times material herein, TelexFree and its Officers James M. Merrill, Carlos N. Wanzeler, Steven M. Labriola, Carlos Costa, Joseph H. Craft, a/k/a Joe H. Craft (collectively, "Defendant Officers"), the Doe Insider Promoters, the Doe Paralegal, TelexFree's Retained Licensed Professionals[4], and Payment Processing Services Companies[5] knew that the Pyramid Ponzi Scheme was not sustainable, and that the representations on Telefree's website and in its marketing materials were false, unfair, and deceptive including, but not limited to, those concerning the guaranteed returns.

19.     Moreover, at all times material herein, TelexFree and its Defendant Officers, the Doe Inside Promoters, Paralegal Doe, its banks, and its Retained Licensed Professionals knew that TelexFree was selling unregistered securities to the members of the putative classes.

20.     Moreover, after the foregoing Defendant Officers, Doe Inside Promoters, Doe Paralegal, Banks, Payment Processing Services Companies, Retained Licensed Professionals knew that TelexFree was an illegal pyramid-type Ponzi scheme which involved the illegal sale of securities, they continued to aid, abet and further such illegal activities.

---

[3]     Brazillian Court Suspends TelexFree's Operations, Behind MLM (June 20, 2013). http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/.

[4]     Attorneys Gerald P Nehra, Esq, individually and doing business as the Law Offices of Nehra and Waak; Gerald P Nehra, Attorney at Law, PLLC; Richard W. Waak individually and doing business as the Law Offices of Nehra and Waak; Richard W. Waak Attorney at Law, PLLC; Joe H. Craft individually and d/b/a as Certified Public Accountant; Craft Financial Solutions, LLC as well as the Defendant Banks are referred to herein as "Retained Licensed Professionals" or "RLP."

[5]     Global Payroll Gateway Inc., International Payout Systems, Inc., Propay, Inc., doing business as PROPAY.COM are referred to herein as "Payment Process Services Companies" or "PPSC."

21.    Despite the foregoing knowledge, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

22.    On April 14, 2014, the Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. abruptly sought bankruptcy protection in Nevada under Chapter 11, admitting that they could not and cannot meet their obligations from VoIP revenues and seeking authority to reject all their current obligations to Promoters.

23.    At all material times herein, Defendants have violated, *inter alia*, the antifraud and securities registration provisions of the federal and state securities laws.

24.    At all material times herein and from at least in or about January 2012 , TelexFree and the other Defendants unlawfully, willfully and knowingly used the means and instrumentalities of interstate commerce and the mails, directly and indirectly, in connection with the purchase and sale of unregistered securities.

25.    TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, in connection with the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of, *inter alia,* the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A.

26.    TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

[10235-01/1302119_2.doc

27.     TelexFree and the other Defendants willfully or knowingly established a pyramid-type Ponzi scheme by paying certain investors purported returns on investment.

28.     Making use of this sophisticated pyramid scheme, TelexFree defrauded the members of the putative class out of funds exceeding $300,000,000.00 dollars in just a few short years.

29.     Certain Defendants share joint and severable liability, including the Doe Inside Promoters, the licensed professionals such as the RLP Defendants, including certified public accountants and lawyers that specialized in sheltering so-called Multi-Level Marketing schemes having aided and abetted TelexFree's Pyramid Ponzi Scheme by providing TelexFree with legal and financial advice and assistance during the course of the fraud, despite knowledge of the fraudulent nature of TelexFree's operation.

30.     The Payment Processing Services Companies and bank Defendants also share joint and several liability having aided and abetted the fraudulent and illegal activity by providing financial and payment processing services, also having knowledge of TelexFree's fraud.

31.     Plaintiffs also make the following allegations upon information and belief and the investigation of their counsel, except as to their own actions and the facts that are a matter of public record:

## JURISDICTION AND VENUE

32.     This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334, and Rule 1001(b)(2) of the Local Rules of Practice for the United States District Court for the State of Nevada.

33.     Venue is proper pursuant to 28 U.S.C. § 1409(a).

34.     Certain of the claims for relief set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A)and (O).  To the extent the claims for relief set forth herein are not core proceedings, Plaintiffs do not consent to entry of final judgment by the bankruptcy court.

[10235-01/1302119_2.doc

35.    The District Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000.00 exclusive of interest and costs, and there are numerous class members who are citizens of states other than TelexFree, LLC's state of citizenship, which is Nevada.

36.    Venue is also proper pursuant to 28 U.S.D. § 1391 because:

a.    TelexFree, LLC resides in this district;

b.    acts and transactions giving rise to this action occurred in this district;

c.    TelexFree, LLC is subject to personal jurisdiction in this district; and

d.    on April 13, 2014, TelexFree, LLC, TelexFree, Inc. and TelexFree Financial, Inc. sought bankruptcy protection in this district (See United States. Bankruptcy Court, District of Nevada, Case No.: BK-S-14-12524-ABL).

37.    James Merrill, Carlos Wanzeler, Steven Labriola, Carlos Costa, Joseph H. Craft and others identified as Does conducted the unlawful business of TelexFree, LLC referenced and detailed in this complaint in Las Vegas, Nevada during all material relevant times herein beginning on February 15, 2012 through approximately April 2014.

38.    James Merrill, Carlos Wanzeler, Steven Labriola, Carlos Costa, Joseph H. Craft and others identified as Does maintained addresses for the unlawful business of TelexFree, Inc. referenced and detailed in this complaint in the Las Vegas, Nevada office during the period between February 15, 2012 through approximately April 2014.

39.    The District Court also has jurisdiction over this action pursuant to Sections 20(b), 20(d)(l) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(l) & 77v(a)], Sections 21(d)(l), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(l), 78u(d)(3)(A), 78u(e) and 78aa], Section 1121 of the Lanham Act [15 U.S.C. § 1121], and Section 1965 of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1965].  Defendants have, directly or indirectly, made use of the means of instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

40.    Venue is also proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.  Defendants transacted business and offered and sold the securities that are the subject of this action to investors in this district.

41.    Furthermore, venue is proper under Section 1965 of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1965], as the Defendants reside, have agents, or otherwise transact business material to this Complaint in this district.

## THE PARTIES

42.    Plaintiff WALDEMARA MARTINS (hereinafter sometimes referred to as "Martins"), is an individual who resides in Massachusetts.  Martins, like many other victims of TelexFree's Pyramid Ponzi Scheme, tendered cash in exchange for a membership in TelexFree (a "TelexFree Membership") and its promised pre-March 9, 2014 return in investment (the Pre March 9, 2014 -Return on Investment").

43.    Plaintiff LEANDRO VALENTIM (hereinafter sometimes referred to as "Valentim") is an individual who resides in Massechusetts.  Valentim, like many other victims of TelexFree's Pyramid Ponzi Scheme, tendered cash in exchange for a TelexFree Membership and its promised Post March 9, 2014 -Return in Investment (the Pre March 9, 2014 -Return on Investment").

44.    Defendant TELEXFREE, INC. is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, having a last known principal place of business at 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752.

45.    TelexFree, Inc. was formerly known as COMMON CENTS COMMUNICATIONS, INC.

46.    Defendant TELEXFREE, LLC is a limited liability company duly organized and existing under the laws of the state of Nevada, having a purported place of business at 4705 S. Durango Drive, #100-J51 (a post office box), Las Vegas, Nevada 89147.

- 8 -

47.     Defendant Paralegal Doe served as TelexFree, LLC's agent, servant or employee at all times relevant to this complaint.

48.     At all times material herein, TelexFree, LLC also maintained offices in the Commonwealth of Massachusetts at 225 Cedar Hill Street, Suite 200, in Marlborough, County of Middlesex, Commonwealth of Massachusetts 01752 between 2012 and this date.

49.     Defendant TELEXFREE FINANCIAL, INC. (hereinafter sometimes referred to as "TelexFree Financial") is a corporation duly organized and existing under the laws of the State of Florida, having its last known principal place of business at 2321 NW 37th Avenue, in Coconut Creek, Florida 33063.

50.     Defendant TELEXELECTRIC, LLLP (hereinafter sometimes referred to as "TelexElectric") is a limited liability limited partnership duly organized and existing under the laws of the State of Nevada, and having its registered agent as BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

51.     Defendant TELEX MOBILE, HOLDINGS, INC. (hereinafter sometimes referred to as "Telex Mobile") is a corporation duly organized and existing under the laws of the State of Nevada, and having its registered agent as BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

52.     Defendant JAMES M. MERRILL (hereinafter sometimes referred to as "Merrill") is an individual now or formerly of 1 Coburn Drive in Ashland, County of Middlesex, Commonwealth of Massachusetts 01721.

53.     At all times material herein, Co-Defendant Merrill was President, Secretary, and Director of TelexFree, Inc.

54.     At all times material herein, Co-Defendant, Merrill was a Manager of TelexFree, LLC, and was listed with the Massachusetts Secretary of State Corporations Division as an authorized person to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property.

55.     At all times material herein, Co-Defendant Merrill, was President, Secretary, and Director of TelexFree Financial.

56.    Defendant CARLOS N. WANZELER (hereinafter sometimes referred to as "Wanzeler") is an individual now or formerly of 373 Howard Street, in Northborough, County of Worcester, Commonwealth of Massachusetts 01532.

57.    At all times material herein, Co-Defendant Wanzeler was Treasurer and Director of TelexFree, Inc.

58.    At all times material herein, Co-Defendant Wanzeler was a Manager of TelexFree, LLC.

59.    At all times material herein, Co-Defendant Wanzeler was Vice-President, Treasurer, and Director of TelexFree Financial, and was listed with the Massachusetts Secretary of State Corporations Division as an authorized person to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property.

60.    Defendant STEVEN M. LABRIOLA (hereinafter sometimes referred to as "Labriola") is an individual now or formerly of 21 Kiwanis Beach Road, in Upton, County of Worcester, Commonwealth of Massachusetts 01568.

61.    The Articles of Incorporation for Common Cents Communications, Inc. filed with the Massachusetts Secretary of State's Office identify Labriola as a Director of the Corporation.

62.    Defendant Labriola functions as the international sales director of TelexFree.

63.    Defendant JOSEPH H. CRAFT, also known as JOE H. CRAFT, (hereinafter sometimes referred to as "Craft") is an individual now or formerly of 825 E. Main Street in Boonville, Indiana 47601-1885.

64.    Defendant Craft is a Certified Public Accountant and maintains offices in Indiana and Kentucky under the name and style Joe H. Craft, CPA/PFS, CFP.  In Indiana, he maintains offices at 825 E. Main Street in Boonville, Indiana 47601-1885.

65.    At all material times herein, Defendant Craft serves as the Chief Financial Officer of Telex Free, Inc. and TelexFree, LLC, and was responsible for preparing or approving their financial statements.

66.    Defendant CRAFT FINANCIAL SOLUTIONS, LLC (hereinafter sometimes referred to as "Craft Financial") is a limited liability company duly organized and existing under

- 10 -

the laws of the state of Indiana, having a principal place of business at 825 E. Main Street in Boonville, Indiana 47601-1885.

67.    Defendant Craft Financial is engaged in the business of providing accounting services and financial advice.

68.    Defendant Craft is the sole member, manager, and registered agent for the Defendant Craft Financial, LLC.

69.    Defendant CARLOS COSTA, (hereinafter sometimes referred to as "Costa") is an individual now or formerly of 44A McClintock Avenue, Unit A, in Worcester, County of Worcester, Commonwealth of Massachusetts 01604.

70.    At all times material herein, Co-Defendant Costa was listed as Manager of TelexFree, LLC with the Massachusetts Secretary of State Corporations Division.

71.    Defendant GERALD P. NEHRA (hereinafter sometimes referred to as "Nehra") is an individual now or formerly of Muskegon, Michigan.

72.    Defendant Nehra maintains a second place of abode at 2149 Tall Oak Court, Sarasota, Florida 34232

73.    Defendant Nehra is an attorney duly licensed to practice law in the State of Michigan with offices at 1710 Beach Street in Muskegon, Michigan 49441.

74.    Defendant GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, is a professional limited liability company engaged in the practice of law and duly organized and existing under the laws of the state of Michigan, having a principal place of business at 1710 Beach Street in Muskegon, Michigan 49441.

75.    Defendant Gerald P. Nehra, Attorney at Law, PLLC, is engaged in the practice of law.

76.    Defendant Nehra is the sole member, manager and registered agent for the Defendant Gerald P. Nehra, Attorney at Law, PLLC.

77.    Defendant RICHARD W. WAAK (hereinafter sometimes referred to as "Waak") is an individual now or formerly of Muskegon, Michigan.

[10235-01/1302119_2.doc

78.    Defendant Waak is an attorney duly licensed to practice law in the State of Michigan with offices at 11300 East Shore Drive, Delton, Michigan 49046.

79.    At all times material herein, Defendant Nehra was engaged in the practice of law with Co-Defendant Richard W. Waak, under the name LAW OFFICES OF NERHA AND WAAK.

80.    Defendant LAW OFFICES OF NERHA AND WAAK had offices at 1710 Beach Street, Muskegon, Michigan 49441 and 11300 East Shore Drive, Delton, Michigan 49046.

81.    At all times material herein, Defendant Waak was engaged in the practice of law with Co-Defendant Nehra, under the name Law Offices of Nehra and Walk, with primary offices at 11300 East Shore Drive, Delton, Michigan 49046, and secondary offices at 1710 Beach Street, in Muskegon, Michigan  49441.

82.    Defendant Waak is the "*Principal Attorney*"[6] of the Law Offices of Nehra and Walk.

83.    Defendant RICHARD W. WAAK, ATTORNEY AT LAW, PLLC, is a professional limited liability company engaged in the practice of law and duly organized and existing under the laws of the state of Michigan, having a principal place of business at 11300 East Shore Drive, Delton, Michigan 49046.

84.    Defendant Richard W. Waak, Attorney at Law, PLLC, is engaged in the practice of law.

85.    Defendant Waak is the sole member, manager and registered agent of Defendant Richard W. Waak, Attorney at Law, PLLC.

86.    The Law Offices of Nehra and Walk is a general partnership between Defendants Nehra, Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Walk, Attorney at Law, PLLC.

---

[6] Law Offices of Nehra and Waak website, http://www.mlmatty.com/2014/02/firm-transition-news-gerry-has-not-retired/

[10235-01/1302119_2.doc

87.     Defendant TD BANK, N.A. (hereinafter sometimes referred to as "TD Bank") is a national banking institution in the United States chartered and supervised by the federal Office of the Comptroller of the Currency.

88.     TD Bank has a principal place of business at 15 Broad Street in Boston, County of Suffolk, Commonwealth of Massachusetts 02109.

89.     At all times material herein, Defendant TD Bank provided banking services, maintained accounts, and received transfers of funds for or for the benefit of TelexFree.

90.     Defendant CITIZENS FINANCIAL GROUP, INC. (hereinafter sometimes referred to as "Citizens Financial") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal offices in Providence, Rhode Island.

91.     Citizens Financial is a banking institution with offices at 28 State Street, Boston, County of Suffolk, Commonwealth of Massachusetts 02109.

92.     At all times material herein, Defendant Citizens Financial provided banking services, maintained accounts, and received transfers of funds for or for the benefit of TelexFree.

93.     Defendant CITIZENS BANK OF MASSACHUSETTS (hereinafter sometimes referred to as "Citizens Bank") is a subsidiary of Citizens Financial.

94.     Citizens Bank conducts business in the Commonwealth of Massachusetts at 28 State Street, in Boston, County of Suffolk, Commonwealth of Massachusetts 02109.

95.     At all times material herein, Defendant Citizens Bank provided banking services, maintained accounts, and received transfers of funds for or for the benefit of TelexFree.

96.     Defendant FIDELITY CO-OPERATIVE BANK doing business as FIDELITY BANK (hereinafter sometimes referred to as "Fidelity Bank") is a Massachusetts Chartered Banking Institution, having its principal offices at 675 Main Street, in Fitchburg, County of Worcester, Commonwealth of Massachusetts 01420.

97.     At all times material herein, Defendant Fidelity Bank provided banking services, maintained accounts, and received transfers of funds for or for the benefit of TelexFree.

98.     Defendant MIDDLESEX SAVINGS BANK (hereinafter sometimes referred to as "Middlesex Savings") is a Massachusetts Chartered Banking Institution, having its principal

offices at 6 Main Street, in Natick, County of Middlesex, Commonwealth of Massachusetts 01760.

99.    At all times material herein, Defendant Middlesex Savings provided banking services, maintained accounts, and received transfers of funds for or for the benefit of TelexFree.

100.    Defendant GLOBAL PAYROLL GATEWAY, INC. (hereinafter sometimes referred to as "GPG") is a corporation duly organized and existing under the laws of the State of California, having its principal offices at 18662 MacArthur Boulevard, Suite 200, in Irvine, California 92612.

101.    Defendant GPG provides payment processing services for companies, and acted as a conduit for payment between TelexFree and its Promoters/Investors.

102.    Defendant INTERNATIONAL PAYOUT SYSTEMS, INC. (hereinafter sometimes referred to as "IPS") is a corporation duly organized and existing under the laws of the State of Florida, having its principal offices at 2500 East Hallandale Beach Boulevard, Suite 800, Hallandale Beach, Florida 33009.

103.    Defendant IPS provides payment processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors.

104.    Defendant PROPAY, INC. (hereinafter sometimes referred to as "ProPay") is a corporation duly organized and existing under the laws of the State of Utah.

105.    Defendant ProPay has its principal offices at 3400 North Ashton Boulevard, Lehi, Utah 84043 and also does business as PROPAY.COM.

106.    Defendant ProPay provides payment-processing services for companies and acted as a conduit for payment between TelexFree and its Promoters/Investors.

107.    It is believed that additional payment – processing services aided and abetted in TelexFree's Pyramid Ponzi sheme but their identities are as yet unknown. For ease of reference at this time they can only be referred to herein at this time as Defendant Payment – Processing Services Doe.

[10235-01/1302119_2.doc]

108.    Disk a Vontade is operated out of a Massachusetts post office box. TelexFree and Disk a Vontade share key management, and prior to their activities as described herein, they shared Brazil as a target market.

109.    Disk a Vontade's domain ("discavontade.com") is registered to Defendant Carlos Wanzeler.

110.    Defendant James Merrill has attended Disk a Vontade events, including those held in Brazil.

111.    The Putative Class Representatives seek to obtain damages, restitution and injunctive relief for the Class, as defined below, from Defendants.

## GENERAL ALLEGATIONS

A.    **TELEXFREE, LLC**

112.    Telex Free, LLC was organized under the laws of the State of Nevada on July 19, 2012.

113.    There is no distinction between the business operations of TelexFree, LLC and TelexFree, Inc.

114.    At all material times herein, TelexFree LLC was identified as a limited liability corporation as registered with the Corporations Division of the Secretary to the Commonwealth of Massachusetts (Identification Number 001105166).

115.    TelexFree, LLC registered with the Secretary of State for the Commonwealth of Massachusetts on April 18, 2013.

116.    At all times material herein, TelexFree, LLC maintained a post office box at 4705 S. Durango Drive, #100-J51, Las Vegas, Nevada 89147.

117.    At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, TelexFree, LLC operated a Massachusetts office at 225 Cedar Hill St., Suite 200, Marlborough, Massachusetts 01752.

118.    At all material times herein, Co-Defendants Carlos Costa, James M. Merrill and Carlos N. Wanzeler were the Managers of TelexFree, LLC.

- 15 -

[10235-01/1302119_2.doc]

119.    At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014,TelexFree, LLC's registered agent for the Commonwealth of Massachusetts was James Merrill whose address is identified as 225 Cedar Hill St. Suite 200, Marlborough, MA 01752.

120.    At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, Co-Defendants James Merrill, Carlos Wanzeler, Steven Labriola, Joseph H. Craft and Carlos Costa conducted the business of TelexFree, LLC in TelexFree's Massachusettsoffice.

121.    TelexFree caused a copy the Business Entity Summary for TelexFree, LLC to filed with the Corporations Division of the Secretary of the Commonwealth of Massachusetts.

122.    Since mid-November 2013, TelexFree has transferred approximately $30 million from its operating accounts to accounts owned and controlled by TelexFree, its affiliated companies or the individual Defendants.

123.    Tens of millions of additional investor funds received by TelexFree are unaccounted for presently.

**B.    TELEXFREE, INC f/k/a COMMON CENTS COMUNICATIONS, INC.**

124.    TelexFree, Inc.[7] is a domestic profit corporation registered with the Corporations Division of the Secretary to the Commonwealth of Massachusetts (Identification Number 000832397).

125.    At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, TelexFree, Inc. maintained a principal office at 225 Cedar Hill St. Suite 200, Marlborough, MA 01752.

---

[7] Paragraph 2.1.2 of the standard TelexFree contract states "TELEXFREE INC, from its headquarters in, Marlboro, Massachusetts (U.S.), on the basis of an operating contract between the latter and the CONTRACTOR (YMPACTUS), has as its primary activity VOIP telephony, using its equipment installed at its headquarters in Massachusetts, where it makes the necessary connections for these calls; it also provides virtual media, through the website www.telexfree.com to associates and to the PROMOTERS that YMPACTUS/TELEXFREE coordinates and controls, including the respective publicity channels."

126. Co-Defendants James M. Merrill and Carlos N. Wanzeler are the officers and directors of TelexFree, Inc.

127. At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, TelexFree, Inc.'s registered agent was Defendant James Merrill, who listed an address of 225 Cedar Hill St., Suite 200, Marlborough, MA 01752.

128. At all times material herein, and more particularly since February 15, 2012, Co-Defendants James Merrill, Carlos Wanzeler, Steven Labriola, Joseph H. Craft and Carlos Costa conducted the business of TelexFree, Inc. in the Marlborough, Massachusetts office

129. TelexFree, Inc. was originally organized on December 31, 2002 under the name Common Cents Communications, Inc. ("CCCI").  CCCI's name was changed to TELEXFREE, INC on February 15, 2012.

130. TelexFree caused a copy of the Business Entity Summary for TelexFree, Inc. as filed with the Corporations Division of the Secretary of the Commonwealth of Massachusetts.

131. TelexFree, Inc. issued 275,000 shares of CNP class stock with a $0.00 value per share.

C.    **TELEXFREE FINANCIAL, INC.**

132. TelexFree Financial was incorporated by Co-Defendant Joseph H. Craft on December 26, 2013.

133. TelexFree Financial was fraudulently set up for the purpose of sheltering funds rightfully belonging to the putative class.

134. At all material times herein, Co-Defendants James M. Merrill and Carlos N. Wanzeler are officers and directors of TelexFree Financial, and Co-Defendant Carlos N. Wanzeler is its registered agent.

135. On December 30 and December 31, 2013, TelexFree Financial received wire transfers totaling $4,105,000 from TelexFree, Inc. and TelexFree, LLC.

136. On April 14, 2014, Defendants TelexFree, Inc., TeleFree, LLC and TelexFree Financial, Inc. abruptly sought bankruptcy protection in Nevada under Chapter 11, admitting that

[10235-01/1302119_2.doc]

they cannot meet their obligations from VoIP revenues, and sought authority to reject all their current obligations to Promoters.

**D.    RELATIONSHIP OF TELEXFREE, LLC, TELEXFREE, INC. AND TELEXFREE FINANCIAL, INC.**

137.    At all times material herein, and at least since February 15, 2012, there has been a high degree of operational interdependence among TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, to the extent that the operations of these entities are indistinguishable.

138.    At all times material herein, TelexFree, LLC, TelexFree, Inc., and TelexFree Financial shared common management and ownership.

139.    More particularly, and at all times material herein, and at least since February 15, 2012, Defendants Merrill, Wanzeler, Labriola, Craft and Costa have together owned and operated TelexFree, LLC, TelexFree, Inc., and TelexFree Financial without any distinction among these entities.

140.    At all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, funds were freely transferred between and among TelexFree, LLC, TelexFree, Inc., and TelexFree Financial without any distinction among these entities.

141.    At all times material herein, TelexFree, LLC, TelexFree, Inc. and TelexFree Financial have also shared common financial, strategic, legal, and human resources.

142.    More particularly, at all times material herein, and at least between February 15, 2012 and approximately April 15, 2014, TelexFree, LLC, TelexFree, Inc. and TelexFree Financial:

    a.    Conducted business from the same business addresses;

    b.    Retained the same employees;

    c.    Conducted business using the same telephone lines;

    d.    Utilized the same copy machines in the course of business;

    e.    Utilized the same banks and bank accounts in the course of business;

    f.    Utilized the same payment processing services companies in the course of business;

- 18 -

[10235-01/1302119_2.doc

g.  Sought and received professional services from the same accountants; and

h.  Sought and received professional services from the same attorneys.

143.    As such, Defendants TelexFree, LLC, TelexFree, Inc. and TelexFree Financial are alter ego entities, which combine to form a single enterprise.

**E.    TELEXFREE'S UNLAWFUL, UNFAIR AND DECEPTIVE PYRAMID PONZI SCHEME**

144.    In January 2013, the Brazilian Bureau of Consumer Protection (known as Procon), began an investigation into TelexFree.

145.    On March 14, 2013, the Ministry of Finance, after its investigation, declared that

> The Telexfree business of selling packages of internet telephony (VoIP, its acronym in English), is not sustainable and suggests a Ponzi scheme, which is a crime against the popular economy.
>
> That is the conclusion of the Secretariat for Economic Monitoring of the Ministry of Finance (Seae / MF) in a statement on Thursday (14).[8]

146.    On March 9, 2014, TelexFree changed its compensation plan, thereby requiring Promoters to sell its VoIP product to qualify for the payments that TelexFree had previously promised to pay them.

147.    TelexFree's former officers or employees stated to the TelexFree transition team that under the Pre March 2014 standard form contract TelexFree owes its promoters over $5 billion dollars.

148.    Following the March announcement TelexFree investors demanded TelexFree reimburse them over $150 million dollars.

149.    The rule change generated a storm of protests from Promoters who were unable to recover their money.  On April 1, 2014, dozens of Promoters descended upon TelexFree's Marlborough, Massachusetts office to protest this change and attempt to regain access to their money.

---

[8]    Ministry of Finance: TelexFree "not sustainable", Behind MLM (Mar. 17, 2013), http://behindmlm.com/companies/ministry-of-finance-telexfree-not-sustainable/.

- 19 -

150.    In furtherance of their unlawful enterprise, TelexFree mailed fraudulent and inaccurate 1099 (Miscellaneous Income) forms to investors, possibly to create the illusion that they had made payments to investors.

151.    The 1099 forms were provided long after the mandated January 31, 2014 deadline, and some after the April 15, 2014 filing deadline.

152.    TelexFree falsely represented that investors had received income that they had in fact never received.

153.    TelexFree did not generate sufficient funds from sales of their phone service to pay the returns on investments that they had contracted to pay.

154.    Instead, the funds TelexFree used to pay the purported returns on investments were the principal investment funds (membership fees) tendered by subsequent TelexFree investors.

155.    TelexFree's Contract at Section 2.6.5 (m) mandates that Promoters are not to use the term investment with respect to the registration costs.

156.    Co-Defendant and Company Counsel Attorney Gerald P. Nehra, through his affiliated companies (Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC), and under the direct supervision of Co-Defendants Richard W. Waak and Richard W. Waak Attorney at Law, PLLC provided this deceitful advice for the purpose of furthering perpetuating Defendants unlawful Pyramid Ponzi Scheme.

157.    Specifically, TelexFree's Contract at Section 2.6.5 (m) specifically provides that the Promoter must not "use terms that distort the real meaning of products or the mechanism and functioning of multilevel marketing, including, without limitation, expressions that convey the idea of instant wealth for nothing in exchange, as well as speaking of registration costs as a 'financial investment.'  Similarly, it is expressly prohibited to use the term 'INVESTMENT' at meetings and in promotional materials in general, orally or in writing."

. . .

. . .

- 20 -

[10235-01/1302119_2.doc

**F.     TELEXELECTRIC, LLLP'S AND TELEX MOBILE HOLDINGS, INC.'S INVOLVEMENT IN THE TELEXFREE PYRAMID PONZI SCHEME**

158.    TelexElectric is a Nevada limited liability limited partnership formed on December 2, 2013 by Co-Defendants Merrill and Wanzeler.

159.    According to its filings with the State of Nevada Secretary of State Office, Co-Defendants Merrill and Wanzeler are listed as the General Partners of TelexElectric.

160.    Co-Defendants Merrill and Wanzler further list their address as 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147, which is the same location as TelexFree, LLC.

161.    TelexElectric also lists as its address 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

162.    Telex Mobile is a Nevada corporation formed on November 26, 2013.

163.    According to its filings with the State of Nevada Secretary of State Office, Telex Mobile identifies its officers and directors as:

        i.    Co-Defendant James M. Merrill is President, Secretary and Director, having an address at 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

        j.    Co-Defendant Carlos Wanzeler is Treasurer and Director, having an address at 4705 S. Durango Drive, #100-J1 (a post office box), Las Vegas, Nevada 89147.

164.    According to filings with the State of Nevada Secretary of State Office, both TelexElectric and Telex Mobile Holdings identify as their registered agent BWFC Processing Center, LLC, 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169

165.    Defendants TelexFree, LLC, TelexFree, Inc., TelexFree Financial, TelexElectric and TelexFree Mobile Holdings are alter ego entities, which combine to form a single enterprise.

166.    TelexFree's financial statements reveal that TelexFree Electric received a $2,022,329.00 "loan" from TelexFree during the class period.

167.   TelexFree's financial statements further reveal that TelexFree Mobile received a $500,870 "loan" from TelexFree during the class period.

168.   TelexElectric was fraudulently set up for the purpose of sheltering funds rightfully belonging to the putative class.

169.   These "loans" were in essence fraudulent transfers by TelexFree to evade claims by investors and creditors, and otherwise to unlawfully abscond with funds that rightfully belonged to creditors and investors.

**G.   TELEXFREE'S MANAGEMENT KNOWINGLY PERPETRATED THE UNLAWFUL TELEXFREE PYRAMID PONZI SCHEME AND CONSPIRACY**

170.   At all times material herein, Defendants Merrill, Wanzeler, Labriola, Craft and Costa (hereinafter sometimes collectively "TelexFree's Management") were responsible for the control and operation of TelexFree and its affiliated entities.

171.   Moreover, TelexFree's Management not only controlled the activities and operations of TelexFree, but also knowingly and willfully conspired to perpetrate, and did in fact perpetrate, the TelexFree Pyramid Ponzi Scheme with full awareness of its fraudulent and illegal nature.

172.   At all times material herein, Defendant Merrill served as the President, Secretary, and Director of TelexFree, Inc., a Manager of TelexFree, LLC, President, Secretary and Director of TelexFree Financial, General Partner of TelexElectric, and President, Secretary and Director of Telex Mobile Holdings

173.   In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Merrill exercised significant control over TelexFree's business operations.

174.   More particularly, Merrill exercised significant control over the TelexFree Pyramid Ponzi Scheme.

175.   Defendant Merrill has appeared in videos posted to the internet, in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.

176.    As of March 28, 2014, the TelexFree website included a biography of Merrill, which stated that Merrill was a 1985 graduate of Westfield State University in economics.

177.    Also, as of March 28, 2013, the TelexFree website stated that Merrill is "well versed in one of the new technologies of the era (VoiP) [sic]."

178.    As of April 28, 2014, the TelexFree Canadian website[9] continued to state that Merrill is a 1985 graduate of Westfield State University in economics and "[k]nowledgeable about a new era of technology (VOIP)."

179.    According to testimony obtained by the Office of the Secretary of the Commonwealth of Massachusetts (hereinafter sometimes referred to as "SOC"), Merrill attended Westfield State University for a mere two years, without either receiving a degree or declaring a major.

180.    Furthermore, in direct contravention to the representations of the TelexFree websites, Merrill testified to SOC that he had only a basic understanding of VoIP technology.

181.    At all times material herein, Defendant Wanzeler served as Treasurer and a Director of TelexFree, Inc., a Manager of TelexFree, LLC, Vice President, Treasurer, and a Director of TelexFree Financial, General Partner of TelexElectric and Treasurer and Director of Telex Mobile Holdings.

182.    According to corporate filings on record with SOC, at all times material herein, Wanzeler has also served as the Chief Executive Officer of TelexFree, Inc.

183.    In his capacities as Officer, Director, Manager and General Partner of the foregoing interrelated companies, Wanzeler exercised significant control over TelexFree's business operations.

184.    More particularly, Wanzeler exercised significant control over the TelexFree Pyramid Ponzi Scheme.

_____

[9] See http://welovetelexfree.com/about/.

185.    Defendant Wanzeler has also participated in marketing TelexFree to potential investors, appearing in videos posted to the Internet in which he can be seen promoting TelexFree as a revenue opportunity for Promoters.

186.    At all times material herein, Defendant Labriola, served as the International Marketing Director for TelexFree, Inc.

187.    Labriola was one of the original Directors of Common Cents Communications, Inc., and at all material times herein exercised significant control over TelexFree's business operations and the operations of its interrelated companies.

188.    Defendant Labriola has also appeared in several videos promoting TelexFree which were posted on the internet, and has acted as TelexFree's spokesman to Investors during post-bankruptcy petition conference calls.

189.    As a Director of TelexFree, Inc., Defendant Labriola, has exercised significant control over the TelexFree Pyramid Ponzi Scheme.

190.    As International Marketing Director for TelexFree, Inc., Labriola has also actively and knowingly perpetrated the TelexFree fraud through the dissemination of false and misleading advertising and marketing communications.

191.    At all times material herein, Defendant Craft, also known as Joe H. Craft, has been a certified public accountant and served as the Chief Financial Officer ("CFO") of Telex Free, Inc and TelexFree, LLC.

192.    In his capacity as CFO of TelexFree, Craft has been responsible for, *inter alia*, preparing or approving TelexFree's financial statements, overseeing TelexFree's accounting methods and records, and otherwise exercising significant supervision and control over TelexFree.

193.    On April 23, 2013, in response to a request for a profit-and-loss statement issued by the SOC, TelexFree produced a document purporting to be TelexFree's 2012 profit-and-loss statement.

194.    TelexFree did not make use of usual and accepted Multi Level marketing accounting practices. For example they did not separate out income generated by sales of VoIP from income generated by other means.

195.    On February 5, 2014, the SOC requested a second profit-and-loss statement from TelexFree for 2012, which TelexFree produced on February 26, 2014.

196.    A comparison of these two profit-and-loss statements – each purporting to be TelexFree's profit-and-loss statement for 2012 – reveals massive discrepancies.

197.    For example, the first statement provided by TelexFree lists Total Income for 2012 at $1,864,939.70, while the second lists Total Income for 2012 at $2,834,835.70.

198.    As further examples, Agent Commission is listed at $520,582.95 in the first, versus $2,105,925.61 in the second; Total Expenses are listed as $784,899.22 in the first, versus $2,333,893.09 in the second; Net Operating Income is listed at $1,080,040.48 in the first, versus $478,251.56 in the second; and Net Income is listed as $1,066,313.39 in the first, versus $477,652.23 in the second.

199.    The existence of duplicative accounting records containing egregious discrepancies is clear indicia of TelexFree's falsification of accounting records and failure to adhere to Generally Accepted Accounting Principals ("GAAP").

200.    As Chief Financial Officer for TelexFree, Inc. and TelexFree, LLC, as well as a certified public accountant, Defendant Craft, knowingly perpetrated the TelexFree fraud by, *inter alia*:

    a.    Overseeing TelexFree's creation of falsified accounting records;

    b.    Failing to ensure that GAAP accounting methods were adopted and adhered to;

    c.    Fraudulently certifying TelexFree's business operations and accounting practices as good and lawful, despite actual knowledge of their unlawful and illegitimate nature;

    d.    Concealing the fact that the AdCentral Packages purveyed by TelexFree were actually securities; and

- 25 -

[10235-01/1302119_2.doc

e.        Concealing and absconding with investor assets.

201.    At all times material herein, Defendant Costa, was listed as Manager of TelexFree, LLC with the Massachusetts Secretary of State Corporations Division.

202.    Costa is one of the original founders of TelexFree.

203.    At all times material herein, Costa was involved in the day-to-day management and oversight of TelexFree and was actively involved in and managed its Brazilian operations.

204.    Costa has appeared on numerous websites and videos posted on the Internet promoting TelexFree and touting its huge financial return.

205.    Costa was an outspoken advocate against the Brazilian Court's decision to enjoin TelexFree's Brazilian activities, and publicly supported TelexFree's illegal and corrupt activities.

206.    Costa is videoed displaying an Insurance Notification representing that it was proof of coverage for investors' returns; however, in actuality the document was a notification denying coverage.  (See http://www.youtube.com/watch?v=q2A2IsAPd0I).

**H.    TELEXFREE'S LAWYERS AIDED, ABBETTED AND PLAYED AN INTERGRAL PART IN TELEXFREE'S UNLAWFUL, UNFAIR AND DECEPTIVE PYRAMID PONZI SCHEME**

207.    Defendants Gerald P. Nehra and Richard W. Waak, along with the entities Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC (hereafter sometimes collectively referred to as "Attorney Defendants") are self-proclaimed multi-level marketing ("MLM") specialist attorneys. (See, e.g., Nehra Endorsement at 7:55[10])

208.    During the course of TelexFree's fraudulent scheme, the above-named Attorney Defendants acted as legal counsel to TelexFree.

---

[10] "After I left Amway in 1991, I had a very brief period as the vice-president and general counsel for Fuller Brush. Fuller Brush did not make it in attempting to convert from direct selling to multi-level direct selling.  And when that job wasn't going to work out I ended up returning from Colorado back to Michigan and opening up a private law practice.  Since 1992, I have practiced law exclusively in multi-level direct selling law.  That is all that I do."

209.    Attorney Nehra had previously acted as counsel to other multi-level marketing firms, which were forced, closed by federal and/or state authorities due to fraudulent pyramid and Ponzi schemes, including Zeek Rewards and AdSurfDaily. [11]

210.    In fact, during the investigation of the AdSurfDaily scheme, Attorney Nehra filed an affidavit in court representing that AdSurfDaily was "not a Ponzi Scheme."[12]   Subsequently, in 2008, AdSurfDaily was forced to cease operations by federal authorities after being found to be a Ponzi scheme; a fact later admitted to by its principal.[13]

211.    Attorney Nehra also previously served in an advisory capacity to Zeek Rewards. Zeek Rewards was later found to be an unlawful Ponzi scheme and was shut down by federal authorities.

212.    Attorney Nehra's extensive experience in multi-level marketing, and particularly his involvement with the Ponzi schemes involving AdSurfDaily and Zeek Rewards, armed him with the knowledge of what constitutes violations of United States securities law.   Indeed, Attorney Nehra was well aware that the use of semantics and obscured phraseology to obfuscate securities laws fails to legitimize TelexFree's illegal Pyramid Ponzi Scheme.

213.    Attorney Waak also claims to have more than thirty years of experience in counseling MLM and direct-selling enterprises.[14]

214.    Attorney Waak claims to have managed the legal defense of multiple class action lawsuits involving claims for "pyramiding, securities fraud, false advertising and civil RICO."

215.    Attorney Nehra and Attorney Waak are together the general partners of the Law Offices of Nehra and Waak.

216.    On the website of the Law Offices of Nerha and Waak, Defendant Attorneys Nehra and Waak claim to specialize in counseling "domestic and foreign companies operating MLM (multi-level marketing) businesses in the United States."[15]

---

[11]   "Gerry   Nehra   gives   'legal   blessing'   to   Telexfree,"   Behind   MLM   (Aug.   2,   2013), http://behindmlm.com/companies/telexfree/gerry-nehra-gives-legal-blessing-to-telexfree/

[12] Id.

[13] Id.

[14] See http://www.mlmatty.com/meet-mlm-attorneys/.

[10235-01/1302119_2.doc]

217.   Also, on the website of the Law Offices of Nerha and Waak, Attorneys Nehra and Waak boast "No Company that retained this firm BEFORE LAUNCH has been shut down by a regulator."[16]

218.   As general partners of the Law Offices of Nehra and Waak, Attorney Nehra and Attorney Waak are jointly and severally liable for torts and obligations of the firm.

219.   During the time that the Law Offices of Nehra and Waak provided legal counsel to TelexFree, Attorney Waak was Principal Attorney of the law firm.

220.   During this time, Attorney Waak, as Principal Attorney of the Law Offices of Nehra and Waak, was charged with oversight of the daily activities of the law firm.

221.   During this time, Attorneys Nehra and Waak also maintained the Defendant Professional Limited Liability Companies, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, which, upon information and belief, also provided legal and counseling services to TelexFree.

222.   Among the Attorney Defendants, and during the course of TelexFree's scheme, there was no clear distinction among the services provided to TelexFree by the Law Offices of Nehra and Waak, the individual Defendants, and their respective Professional Limited Liability Companies.

223.   The Attorney Defendants' role and involvement in the TelexFree Pyramid Ponzi Scheme exceeded merely providing legal counsel because they knowingly acted to further and perpetuate TeleFree's illegal Pyramid Ponzi Scheme, which caused Plaintiffs Waldemara Martins and Leandro Valentim and the similarly situated Putative class members to suffer economic loss.

224.   The Attorney Defendants had actual knowledge that the TelexFree Business Model was a fraudulent Pyramid Ponzi Scheme.

225.   Seeking to personally profit from TelexFree's exploitation of the members of the putative class, Defendant Gerald P. Nehra drew upon his prior experience to aid, abet and play

———————————————————— (continued)

[15] Id.

[16] *Id.*

- 28 -

an integral part in TelexFree's unlawful, unfair and deceptive acts and practices during times relevant to this complaint.

226.    Attorney Nehru counseled TelexFree on methods to evade United States securities laws that were intended to offer, in part, protection from pyramid Ponzi schemes; all to enrich himself financially and serve his own selfish interests.

227.    Attorney Nehra further encouraged TelexFree Investors to unknowingly participate in the evasion of federal and state securities laws.

228.    Defendant Nehra accomplished this by representing that his extensive experience as an MLM expert and his thorough research of TelexFree's business model allowed him to form a legal opinion that TelexFree was a legitimate business.

229.    In making this professional opinion Defendant Nehra misrepresented TelexFree as a legitimate business concern.

230.    For instance, by instructing Investors to avoid using the terms "investment" with reference to AdCentral Package (See TeleFree Contract, Paragraph 2.6.5(m)), he attempted to conceal, and encouraged others to conceal, the fact that TelexFree was involved in the sale of securities, and further attempted to strip Investors of the rights afforded them by federal and state securities laws.

231.    In advising TelexFree Investors to act to avoid the protections offered by federal and state securities laws, Attorney Nehra never once advised the putative class member TelexFree Investors that so acting presented a risk to them, including the risk of participating in an unlawful scheme.

232.    In advising TelexFree Investors to act to avoid the protections offered by federal and state securities laws, Attorney Nehra never once advised the putative class member TelexFree Investors that so acting was against their own interests or that it better served TelexFree and himself.

233.    Attorney Nehra's acts of aiding, abetting and playing an integral part in TelexFree's unlawful, unfair and deceptive acts and practices exceed the scope of zealously representing TelexFree.

- 29 -

234.    Defendant Gerald Nehra contributed in an indispensable way to TelexFree's continued unlawful operation in the United States because, as a duly licensed member of the bar, he publicly stated to Investors that, in his professional opinion, TelexFree's business model and operations complied with federal and state laws.

235.    TelexFree and its Officers knowingly used Attorney Nehra's legal opinions and misrepresentations as a marketing tool to unfairly and deceptively further and advance their illegal Pyramid Ponzi Scheme.

236.    Attorney Nehra knew his legal opinions and representations would be used by TelexFree as a marketing tool to further and advance their business model.

237.    Attorney Nehra's opinions were packaged and promoted as part of TelexFree's total "post Brazilian shut down package" to the members of the putative class.

238.    As described in greater detail throughout, in the early spring of 2013 TelexFree Brazil was found to be an illegal pyramid and Ponzi scheme.

239.    TelexFree suffered a financial crisis when the funds of hundreds of thousands of Brazilian affiliate investors were frozen in company accounts by order of the Brazilian Court.

240.    To keep its Pyramid Ponzi Scheme going, TelexFree needed a constant influx of new investor cash.

241.    In spring 2013, TelexFree was forced to focus on new markets, including new Investors from the United States and Canada, because their Brazilian operation had been shuttered and all Brazilian assets were frozen.  To enhance the credibility and marketability of their United States operation, TelexFree employed the Attorney Defendants as a guise to legalize their illegal and fraudulent methods, operation and business plan.

242.    On the weekend of July 26th and 27, 2013, TelexFree held an event, which they dubbed a "super weekend," in Newport Beach, California.  The focus of TelexFree's "super weekend" event included considerable efforts intended to reassure Investors that its United States operations and program were legitimate, lawful and worth putting their money behind.

243.    Notwithstanding the fact that TelexFree's Brazilian bank accounts were frozen and all their Brazilian recruiting and Return on Investment payments had been suspended by

- 30 -

court order in their largest affiliate market, Attorney Nehra advised attendees that the shut-down in Brazil would have no bearing on TelexFree's U.S. operations.

244.    At this "super weekend" event, Attorney Nehra spoke at length to attending investors, assuring them of the legality of TelexFree's operation stating: "It is legally designed…you are on very solid legal ground," and stating that TelexFree's operation had been "vetted by the Nehra and Waak law firm."[17]

245.    In fact when asked by a concerned affiliate about the injunction granted against the company, Attorney Nehra first deflected its relevance by stating:  "Okay, I am the MLM specialist and attorney for TelexFree in the United States only.  So I gotta duck the question."[18]

246.    Attorney Nehra left no doubt that he and his firm were acting as legal counsel to TelexFree to assist them in insuring their U.S. operations were lawfully conducted, knowing that, in fact, these operations were nothing more than an illegal Pyramid Ponzi Scheme.

247.    Although, at all times material herein, Attorney Nehra emphatically assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate and lawful, he had actual knowledge that TelexFree's operation was unlawful and illegitimate.

248.    Furthermore, at all times material herein, Attorney Nehra assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate, although he had actual knowledge that TelexFree Multilevel Marketing Network "Partnerships"[19] involving TelexFree's AdCentral marketing packages were in fact unregistered

---

[17]  "Gerry Nehra gives 'legal blessing' to TelexFree," Behind MLM (Aug. 2, 2013), http://behindmlm.com/companies/telexfree/gerry-nehra-gives-legal-blessing-to-telexfree/.  The full length tape of his legal opinions and presentation can be found at: http://www.psquad.com/gerald-nehra.html (herein, "Nehra Endorsement")

[18] Id, See Nehra Endorsement, supra, at 24:20.

[19] Paragraph 2.2.1 of the standard TelexFree Contract states "Synthesis of the legal relationship:
The user, by accessing the website of TELEXFREE.COM can become a member through payment of the respective fee, which will provide access to the TelexFree Multilevel Marketing network for the period of one year, without extension or renewal.  At this stage, the member is called a PARTNER.  The PARTNER will have the right to acquire, at an exclusive discount, products that are offered on the website www.telexfree.com, with the principal VOIP telephony accounts called 99TELEXFREE.  The PARTNER, upon acquiring them in the form of a kit

[10235-01/1302119_2.doc]

securities.  Attorney Nehra even provided advice on how to unlawfully circumvent federal and state securities laws.

249.    In addition, and at all times material herein, Attorney Nehra assured Investors and potential Investors that, in his professional opinion, the TelexFree business model was legitimate and lawful, even though Attorney Nehra had specific knowledge of the ruling of the Brazilian Court and knowledge of and access to TelexFree's United States operations and their composition.

250.    In fact, and more particularly, Attorney Nehra knew that:

 a. TelexFree used the exact same business model in Brazil as they do in the United States and throughout the world;

 b. The Brazilian court had made a specific finding of fraud and that TelexFree's United States operations and composition was an unlawful venture;

 c. The Brazilian court described Telex business operations in terms of the quintessential pyramid scheme after TelexFree's own lawyers unwittingly admitted as much;

 d. TelexFree's lawyer Djacir Falcão stated to the Brazilian court that if the injunction continues the company may enter into bankruptcy:  "Running the company really becomes difficult because of the court decision, so we will appeal," said Falcão[20];

——————————— (continued)

(ADCENTRAL or FAMILY kit) assumes the title of PROMOTER and, as such, receives a space on the site www.telexfree.com to promote the products/services that he has acquired.  He also receives training and access to materials also made available on the TELEXFREE website so that he can undertake to promote the latter and avail himself of the opportunity to be a PARTNER and PROMOTER to others in his circle of relationships.  All activities are performed by the PARTNER/PROMOTER without any employment relationship, and they are able individually to manage the team and the resources it seeks to make available for such purpose, of their own free will.  For the promotion of products/services he will receive a bonus in direct proportion to his results, based on the levels explained in a separate section in these GENERAL REGULATIONS.

He must obey all the clauses of these GENERAL REGULATIONS so that the name of TELEXFREE and the juridical persons associated with it remain unblemished.

[20] Upon information and belief based upon quote in the newspaper Rio Branco, <u>Tribune da Bahia</u> so reported.

- 32 -

e.   Falcão tried to appeal to the Brazilian judges on the grounds that "should the company spend a few more days being prohibited from signing up new investors, they would have no money to pay the old ones;"

f.   A Brazilian judge rejected this argument and denied TelexFree's injunction appeal;

g.   TelexFree's other appeals were rejected by the Brazilian courts;

h.   One Brazilian judge remarked that the issue is that the earnings will be exhausted when the main source of revenue of the group (new affiliate registrations) stops;

i.   The above scenario is typically the result of a pyramid scheme;

j.   Judge Samoel Evangelista, 2nd Civil Chamber of the Court of Acre (TJ-AC), entered an order to keep the TelexFree funds frozen, to block future payments to TelexFree in Brazil and to enjoin TelexFree from signing on new investors in Brazil;

k.   According to Brazilian Judge Thais Kalil, how TelexFree earnings are paid out was advantageous to the prosecutor's argument, in that adding publishers to the network is of more importance than actually trying to sell the VoIP product;

l.   Judge Thais Kalil also wrote that "(t)he issue is that the earnings will be exhausted when the main source of revenue of the group (new affiliate registrations) stops.  Many (affiliates) do not even have the opportunity to recover their initial investment (minimum U.S. $339) and this is detrimental."

251.   Defendant Nehra's own comments make clear that he knew that TelexFree was an unlawful pyramid Ponzi scheme.

252.   Defendant Nehra knew at all times relevant to his providing legal opinions and counsel at the request of TelexFree that TelexFree's conduct constituted a breach of duty to its Investors.

- 33 -

253.    Defendant Nehra knew at all times relevant to his providing legal opinions and counsel at the request of TelexFree that his role was intended to give substantial assistance or encouragement to TelexFree to continue its unlawful business model.

254.    Defendant Nehra knew at all times relevant to his providing legal opinions at the request of TelexFree that TelexFree intended to use Nehra prominently as a marketing tool on both their localized Brazilian (Portuguese) and Spanish (Spanish) website portals, in an effort to make TeleFree's illegal Pyramid Ponzi Scheme appear legitimate, thereby continuing and perpetuating the ongoing fraud.

255.    TelexFree in fact did, with his knowledge, use Attorney P. Nehra and his legal opinions supporting their business model as lawful prominently as a marketing tool on both their localized Brazilian (Portuguese) and Spanish (Spanish) website portals.

256.    Defendant Nehra, in order to serve his own pecuniary self-interests, willfully aided, abetted, counseled, induced, and/or procured TelexFree's violations of law regarding the proper segregation and maintenance of customer funds, and acted in concert and combination with Defendant TelexFree in such violations.

257.    Defendant Nehra gave substantial assistance to TelexFree in accomplishing a tortious result, and Nehra's own conduct, separately considered, constitutes a breach of duty to Investors because, *inter alia*, he:

    a.   Knowingly misrepresented the legality and sustainability of TelexFree's operations to the detriment of Investors, and received fees from TelexFree for doing so;

    b.   Knowingly obscured and obfuscated the illegal nature of TelexFree's scheme by the manipulative use of language, including, e.g., advising TelexFree that the use of the term "investment" must be avoided;

    c.   Breached his duty of professional care to investors, by failing to exercise proper due diligence in investigating the legality of TelexFree's operations;

    d.   Advised and encouraged Investors to evade United States securities laws to the benefit of TelexFree and detriment of the Investors and the public; and

- 34 -

e.   Engaged in a civil conspiracy to defraud TelexFree's investors by means of a Pyramid Ponzi Scheme, and, in fact, took a leading role in the scheme.[21]

258.   Attorney Waak, as general partner and Principal Attorney of the Law Offices of Nehra and Waak, was aware of, oversaw, and, upon information and belief, participated in Attorney Nehra's tortious conduct with respect to the TelexFree Pyramid Ponzi Scheme.

259.   Attorney Waak, as general partner and Principal Attorney of the Law Offices of Nehra and Waak, was aware of, oversaw, and, upon information and belief, participated in TelexFree Pyramid Ponzi Scheme.

## I.   TELEXFREE'S CERTIFIED PUBLIC ACCOUNTANT AIDED, ABBETTED AND PLAYED AN INTERGRAL PART IN TELEXFREE'S UNLAWFUL, UNFAIR AND DECEPTIVE PYRAMID PONZI SCHEME

260.   As the Chief Financial Officer of TelexFree, Inc. and TelexFree, LLC, Defendant Craft, also known as Joe H. Craft, has been a certified public accountant and served as the Chief Financial Officer ("CFO") of Telex Free, Inc. and TelexFree, LLC.

261.   Defendant Craft is also the sole Member and Manager of Craft Financial, an Indiana-based limited liability company.

262.   Defendants Craft and Craft Financial are indistinguishable with regards to their involvement with the TelexFree Pyramid Ponzi Scheme.

263.   Defendants Craft and Craft Financial knowingly participated in and perpetuated TeleFree's illegal Pyramid Ponzi Scheme.

264.   In his dual capacity as CFO and certified public accountant of TelexFree, Defendants Craft and Craft Financial have been responsible for, *inter alia*, preparing or approving TelexFree's financial statements, overseeing TelexFree's accounting methods and records, and otherwise exercising significant supervision and control over TelexFree.

---

[21] As stated by Justice William O. Douglas, "just as a fine natural football player needs coaching in the wiles of the sport, so, too, it takes a corporation lawyers with a heart for the game to organize a great stock swindle or income tax dodge and drill the financiers in all the precise details of their play."  William O, Douglas, Directors Who Do Not Direct, 47 Harv.L.Rev. 1305, 1329 (1934).

265.    On April 23, 2013, in response to a request for a profit-and-loss statement issued by the SOC, TelexFree produced a document purporting to be TelexFree's 2012 profit-and-loss statement.

266.    As stated, on February 5, 2014, the SOC requested a second profit-and-loss statement from TelexFree for 2012, which TelexFree produced on February 26, 2014.

267.    As stated, a comparison of these two profit-and-loss statements – each purporting to be TelexFree's profit-and-loss statement for 2012 – reveals massive discrepancies.

268.    For example, the first statement provided by TelexFree lists Total Income for 2012 at $1,864,939.70, while the second lists Total Income for 2012 at $2,834,835.70.

269.    As further examples, Agent Commission is listed at $520,582.95 in the first, versus $2,105,925.61 in the second; Total Expenses are listed as $784,899.22 in the first, versus $2,333,893.09 in the second; Net Operating Income is listed at $1,080,040.48 in the first, versus $478,251.56 in the second; and Net Income is listed as $1,066,313.39 in the first, versus $477,652.23 in the second.

270.    The existence of duplicative accounting records containing egregious discrepancies is clear indicia of TelexFree's falsification of accounting records and failure to adhere to GAAP.

271.    As CFO and certified public accountant for TelexFree, Inc. and TelexFree, LLC, as well as a certified public accountant, Defendants Craft and Craft Financial, knowingly perpetrated the TelexFree fraud by, *inter alia*:

    a.    Overseeing TelexFree's creation of falsified accounting records;

    b.    Failing to ensure that GAAP accounting methods were adopted and adhered to;

    c.    Fraudulently certifying TelexFree's business operations and accounting practices as good and lawful, despite actual knowledge of their unlawful and illegitimate nature; and

    d.    Conspiring with TeleFree's Officers to structure and perpetuate an illegal pyramid Ponzi scheme designed to defraud Investors and enrich themselves.

- 36 -

[10235-01/1302119_2.doc]

272.    Defendants Craft and Craft Financial disseminated, and otherwise allowed to be disseminated, false and inaccurate financial information among Investors, knowing that such information was false an designed to continue and perpetuate the illegal Pyramid Ponzi Scheme.

273.    In particular, Defendants Craft and Craft Financial authorized TelexFree to provide Investors with inaccurate and fraudulent 1099 (Miscellaneous Income) forms, in many cased long after the January 31, 2014 required deadline, and in an effort to misrepresent payments made to Investors and conceal assets.

274.    The fact that these inaccurate 1099's are expected to be filed with the Internal Revenue Service and State Revenue Offices will impose further an undue and massive hardship upon investors.

275.    Defendants also prepared false financial documents for affiliated TelexFree entities and prepared false tax returns for the affiliated TelexFree entities.

## J.    THE BANKING INSTITUTION AND FINANCIAL SERVICES PROVIDER DEFENDANTS KNOWINGLY AIDED AND ABETTED TELEXFREE'S SCHEME AND RECEIVED FRAUDULENT TRANSFERS OF FUNDS

276.    During the course of the TelexFree Pyramid Ponzi Scheme, Defendants TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, and ProPay and the Does provided crucial financial services to TelexFree, which enabled TelexFree to carry on its Pyramid Ponzi scheme.

277.    TelexFree's financial services providers, including the aforesaid banking institutions and payment processing services providers, knowingly aided and abetted TelexFree's Pyramid Ponzi Scheme by, *inter alia*:

a.    Receiving transfers of funds from, and on behalf of, TelexFree in the course of TelexFree's fraudulent business, despite knowledge of the fraudulent nature of TelexFree's business enterprise;

b.    Receiving transfers of funds from TelexFree, its affiliated entities, and its executive officers, which transfers deepened TelexFree's insolvency, despite having knowledge of TelexFree's actual or imminent insolvency at the time of

- 37 -

[10235-01/1302119_2.doc]

such transfers;

c. Processing payments to, and on behalf of, TelexFree, including its affiliated entities and Management, in the course of TelexFree's fraudulent business, despite knowledge of the fraudulent nature of TelexFree's business enterprise; and

d. Otherwise enabling the TelexFree Pyramid Ponzi Scheme to expand and continue by providing necessary financial services to TelexFree, despite actual knowledge of fraud on the part of TelexFree.

278. Defendants, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, the "Doe" banks and Middlesex Savings (hereinafter sometimes collectively referred to as "Banking Institution Defendants") possessed actual knowledge of the fraudulent nature of TelexFree's business operation, since at least June 2013.

279. Despite knowledge of the fraudulent nature of TelexFree's business operations, the Banking Institution Defendants continued to provide TelexFree with banking services.

280. In particular, upon information and belief, the Banking Institution Defendants received funds from Investors, which funds were then held for the benefit of TelexFree, its affiliated entities, and its Management.

281. Furthermore, the Banking Institution Defendants also received large transfers of funds from TelexFree, its affiliated entities, and its Management, during which time TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, thereby deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.

282. Defendants GPG, IPS, the "Doe" payment processors and ProPay (hereinafter sometimes collectively referred to as "Payment Processing Services Companies" or "PPSC Defendants") possessed actual knowledge of the fraudulent nature of TelexFree's business operations since at least June 2013.

283. Despite knowledge of the fraudulent nature of TelexFree's business operations, the PPSC Defendants continued to provide TelexFree with payment processing services.

284.    More particularly, the PPSC Defendants processed payments by Investors to TelexFree in the course of TelexFree's fraudulent business operations, which funds were then held for the benefit of TelexFree, its affiliated entities, and its Management.

285.    Upon information and belief, the PPSC Defendants also processed large transfers of funds from TelexFree, its affiliated entities, and its Management, to Banking Institution Defendants and other receivers, during which time TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, thereby deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.

286.    The PPSC Defendants received payment of substantial fees in return for providing these services.

287.    More particularly, IPS provided TelexFree with a service titled "e-Wallet," which was used by TelexFree to process electronic transfers of funds by Investors to TelexFree.

288.    According to a TelexFree balance sheet, dated December 31, 2013, posted by the Washington State Utilities and Transportation Commission, as of December 31, 2013, TelexFree claimed $31,640,192.30 in assets then held by IPS (under the brand name "e-Wallet") on behalf of TelexFree.

289.    Defendant GPG also processed electronic transfers of funds by Investors to TelexFree.

290.    Defendant ProPay, which also does business as Propay.com, also processed such electronic transfers of funds on behalf of TelexFree.

291.    Furthermore, upon information and belief, ProPay processed transfers of funds by and on behalf of TelexFree, its affiliated entities, and its Management, during which time TelexFree was insolvent, despite knowledge of the fraudulent nature of TelexFree's business operations, thereby deepening TelexFree's insolvency and assisting TelexFree and its Management in concealing assets.

. . .

. . .

. . .

- 39 -

### K.    TELEXFREE

292.    TelexFree, LLC or TelexFree, Inc. (hereafter referred to as "TelexFree") is a marketer of telecommunications and advertising primarily targeting the hard-working Brazilian - American and Dominican- American communities.

293.    Other minority groups have also been victimized.

294.    TelexFree is currently under investigation for offering fraudulent and unregistered securities by running a multi-level marketing scheme.

295.    This scheme borrows elements from the once common phone card frauds of the mid-2000's, while supercharging its reach through an elaborate internet-marketing machine.

296.    Using various interrelated business operations, fraudulent practices, schemes, bank accounts and entities, TelexFree claims it has raised nearly $1,000,000,000.00 worldwide.[22]

297.    TelexFree has not received $1,000,000,000.00 worldwide.

298.    As with all Ponzi or pyramid Schemes, TelexFree operations are untenable without a continuous influx of new capital.

299.    Indeed, the financial basis of the TelexFree scheme centers on the recruitment of additional participants and placing online advertisements – not the sales of 99TelexFree Voice over Internet Protocol computer programs (hereinafter "VoIP Program(s)").

300.    Class Members were fraudulently induced to invest in at least two other "scam" business opportunities involving the offer or sale of unregistered securities in Massachusetts, namely, 1) TelexFree's passive income scheme, and 2) an offer to invest in TelexFree's hotel program.

301.    Despite the fact that upon the advise of their legal counsels, TelexFree referred to the members of the putative class as Associates and Promoters, Plaintiffs Martins and Valentim and all members of the putative class member are considered under federal and state securities law as "Investors".

. . .

---

[22] TelexFree raised over $75,000,000.00 in Massachusetts alone between February 15, 2012 and April 2014.

- 40 -

## L.  TELEXFREE'S PONZI SCHEME IS A PYRAMID

302.    In January 2013, the Brazilian Bureau of Consumer Protection (known as Procon), began a investigation into TelexFree.  In its January 11, 2013 press release, Procon indicated that it had *"detected evidence of crimes"*:

> The investigation initiated by civil prosecution of Consumer Protection (no. 01/2013) shows several controversial issues and possible crimes that put consumers at risk in time to accept that kind of deal.

> Among the possibilities, there is a breach in the Federal Law No. 1.521/51, art. 2, according to which it is a crime:

> "Obtaining or attempting to obtain illicit gains at the expense of the people or of undetermined number of people through speculation or processes fraudulent ('snowball', 'chains', 'pichardismo' and any other equivalent)" including Ponzi pyramid".

> There is also the possible violation of the Code of Consumer Protection (CDC), with false advertising, failure of product information and company, abuse of weakness or ignorance of consumers and conditions unreasonable disadvantage, among others.[23]

283.    Procon subsequently initiated an official complaint and notified the "State Prosecutors Office, the Minister of Finance and the Federal Police."[24]  The Ministry of Finance, after its investigation, declared that:

> The Telexfree business of selling packages of internet telephony (VoIP, its acronym in English), is not sustainable and suggests a Ponzi scheme, which is a crime against the popular economy.
> That is the conclusion of the Secretariat for Economic Monitoring of the Ministry of Finance (Seae / MF) in a statement on Thursday (14).[25]

284.    As the matter processed through the Brazilian Court System, the Ministry of Finance was ordered to refrain from issuing further statements about the matter.  In a blatantly

---

[23]    "TelexFree under criminal investigation in Brazil", Behind MLM (Feb. 15, 2013), http://behindmlm.com/companies/telexfree-under-criminal-investigation-in-brazil/.

[24]    "Ministry of Finance: TelexFree' not sustainable'" Behind MLM (Mar. 17, 2013), http://behindmlm.com/companies/ministry-of-finance-telexfree-not-sustainable/.

[25] Id.

- 41 -

misleading and deceptive act, TelexFree circulated through its affiliates the following misrepresentation of the order:

> It's official!  The investigation on TelexFree has been absolved of what Behind MLM has researched and posted.[26]

285.    On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "a stop to TelexFree's business operations, including the registration of new affiliate investors, acceptance of new investments and paying any returns owed on existing affiliate investments."[27]

286.    At all times material herein, the other Defendants knew that TelexFree was and illegal Pyramid Ponzi Scheme which involved the illegal sale of securities, but continued to aid, abet and further such illegal activities.   Despite the foregoing knowledge, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

287.    On March 9, 2014, TelexFree changed its compensation plan, thereby requiring Promoters to sell its VoIP product in order to qualify for the payments that TelexFree had previously promised to pay them.  The rule change generated a storm of protests from Promoters who were unable to recover their money.

288.    On April 1, 2014, dozens of Promoters descended upon TelexFree's Marlborough, Massachusetts office to protest this change and attempt to regain access to their money.  Local media covering interviewed one Promoter who admitted that the VoIP service is "almost impossible to sell".[28]  On April 14, 2014, Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial abruptly sought bankruptcy protection in Nevada under Chapter 11,

---

[26]    "Brazilian Court suspends TelexFree operations", Behind MLM (June 20, 2013), http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/.

[27] Id.

[28] Scott O'Connell,"Upset customers look for answers at TelexFREE offices", Wicked Local-Dennis (April 1, 2014 (updated April 17, 2014)), http://dennis.wickedlocal.com/article/20140401/NEWS/140409503?sect=More&map=0.

[10235-01/1302119_2.doc]

admitting that they cannot meet their obligations from VoIP revenues and seeking authority to reject all its current obligations to promoters.

289.    At all relevant times herein, Defendants engaged in:  (a) fraudulent or deceptive conduct in connection with the purchase or sale of securities, in violation of Section 10 (b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; (b) fraud in the offer or sale of securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"); and (c) the offer or sale of unregistered securities, in violation of Section 5 of the Securities Act.

290.    In addition, TelexFree and the other Defendants unlawfully, willfully and knowingly used means and instrumentalities, directly and indirectly, in connection with the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of, *inter alia,* the Massachusetts Uniform Securities Act, M.G.L. c. 110A, Section 410b.

291.    Plaintiffs make the following allegations upon information and belief and the investigation of their counsel, except as to their own actions and the facts that are a matter of public record:

292.    TelexFree's business purportedly centers on the sale of its VoIP Program, 99 TelexFree, despite the fact that TelexFree's president testified to having limited knowledge of VoIP and never having been in the telecom business.

293.    A VoIP computer program, such as 99TelexFree, allows an individual to place phone calls over the Internet.

294.    In effect, an individual can use VoIP as a substitute for traditional landline phone services.

295.    Using technology borrowed from Disk A Vontade, a nearly identical venture with common management, TelexFree rebranded the VoIP Program, offering it for a flat monthly fee of $49.90.

296.    Unlike Disk A Vontade operations, however, TelexFree coupled the VoIP Program with a wildly lucrative and fraudulent scheme (hereinafter the "Passive Income Scheme").

- 43 -

297.    The core of the Passive Income Scheme centers on the investment of either $289.00 or $1,375.00.

298.    A participant who invests $289.00 receives one advertisement kit and ten VoIP Programs.

299.    A participant who invests $1,375.00 receives five advertisement kits and fifty VoIP Programs.

300.    The TelexFree advertisement kit enables participants to generate a return by posting pre-written advertisements, to pre-determined websites, through an automated TelexFree system.

301.    A participant's daily use of the advertisement kits generates investment returns without the need for any VoIP Program sales.

302.    As testified to, posting advertisements is an effortless process that takes only a few minutes per advertisement.

303.    Indeed, many participants pay third parties to post advertisements – completely outsourcing any required work at a minimal cost.

304.    By merely posting one advertisement each day of the week, the TelexFree participant receives an additional VoIP Program.

305.    The participant can sell the additional VoIP Program to TelexFree for $20.00.

306.    Thus, over the course of the year, a participant who initially invests $289.00 and does nothing more than place one advertisement per day can receive profit of at least $681.00 – a return in excess of 200%.

307.    Alternatively, a participant who initially invests $1,375.00 and does nothing more than place five advertisements per day can receive profit of at least $3,675.00 – a return in excess of 250%.

308.    This feature alone has attracted thousands of individuals to invest in TelexFree.

309.    The Passive Income Scheme generates further returns for participants through various bonus structures and recruitment commissions.

310.    TelexFree tailors each of the additional income streams to incentivize recruitment.

- 44 -

311.   By merely recruiting one individual into the TelexFree scheme, a participant can receive as much as $100.00.

312.   By recruiting multiple individuals, TelexFree participants become eligible for revenue sharing bonuses of up to 3% of the TelexFree's VoIP Program sales.

313.   Hidden among TelexFree's bonus structure and recruitment commissions is the fact that TelexFree participants may self-qualify.

314.   Indeed, as testified by participants, a participant may invest in more than one advertisement kit and personally purchase the VoIP Program to earn bonuses.

315.   Thus, a participant may purchase a VoIP Program, never use the program, and still qualify for additional income.

316.   Without ever selling any VoIP Program, the participant receives a return far in excess of the 200-250% guaranteed return.

317.   To drum up interest in recruiting, TelexFree held extravaganzas complete with a rock concert atmosphere and wild cheering, including the "wave."

318.   Until recently, the TelexFree website and TelexFree presentations included pictures of cash and luxury property.

319.   In one such presentation, TelexFree touted the Passive Income Scheme as "the opportunity of a lifetime."

320.   Through such fantasies, reserved only for those at the top of the Passive Income Scheme, TelexFree induced investments drawn from participants' earnest earnings and savings.

321.   Troublingly, TelexFree allowed certain participants to join the scheme despite prior run-ins with the law.

322.   TelexFree prominently highlighted one such participant, Defendant Rodrigues, as the top promoter in the world on the TelexFree website.

323.   Rodrigues, a self-proclaimed millionaire, had previously operated a similar multi-level marketing phone card fraud shuttered by the SEC in 2006.

324.   TelexFree's revenue from VoIP Programs sales alone is inadequate to satisfy participant returns.

- 45 -

325.    In 2012 and 2013, TelexFree identified 4,845,576 VoIP Program transactions totaling $238,395,353.80.

326.    Net revenue received by TelexFree from VoIP Program sales was significantly less due to substantial commission payments.

327.    Importantly, TelexFree founder Wanzeler could not identify the number of individuals purchasing only a VoIP Program without also becoming a participant.

328.    Wanzeler provided wildly varied estimates when challenged to identify the number of VoIP Programs sold to non-participants.

329.    Over the same period, TelexFree had 783,771 investments of either $289.00 or $1,375.00 totaling $880,189,455.32.

330.    Assuming that each participant invested only $289.00 and did no more than post one advertisement per day, TelexFree owed participants a total of $799,446,420.00.

331.    Alternatively, if each participant invested only $1,375.00 and did no more than post five advertisements per day, TelexFree owed $3,997,232,100.00 to its participants.

332.    According to data provided by TelexFree, $1,375.00 investments accounted for 88% of transactions through Massachusetts-based participants.

333.    Even assuming that only 50% of all participant investments were for $1,375.00, TelexFree would still owe $2,398,897,200.00 – a number that far exceeds TelexFree's reported total revenues over the same period.

334.    This figure of almost $2.4 billion does not even include further bonuses, recruitment commissions, and revenue sharing.

335.    The inclusion of these additional payments would create an even greater disparity between the VoIP Program revenue and guaranteed money paid out of the Passive Income Scheme to participants.

336.    In addition to the Passive Income Scheme, TelexFree, through a Brazilian affiliate, offered an investment in a Best Western Hotel.

337.    As described by TelexFree's president, the Best Western Hotel opportunity was an important marketing tool to bolster TelexFree credibility worldwide.

338. TelexFree management facilitated the offer of the Best Western Hotel opportunity through the inclusion of the Best Western Hotel opportunity on the front page of the TelexFree website accessible in the Commonwealth.

339. Through a prominently placed website banner and video, TelexFree presented an investment opportunity with a guaranteed yearly return of over 8%.

340. The Best Western Hotel opportunity video remained on the United States-based TelexFree website for months despite the fact that the president of TelexFree was aware of the video and requested TelexFree's website staff to remove the video.

341. In fact, the difference between U.S. TelexFree operations and Brazilian operations is a distinction without a difference.

342. As described by TelexFree management, the ownership interests in TelexFree, Inc. (Massachusetts-based), TelexFree LLC (Nevada-based) and Ympactus (Brazilian-based), overlap.

343. Both Defendants Merrilland Wanzeler, self-proclaimed founders of TelexFree, hold 50% ownership interest in the United States entities and 20% and 40% interests, respectively, in the Brazilian entity.

344. Defendant Costa, head of Brazilian operations and longtime friend of Wanzeler, was an owner of TelexFree, LLC.

345. In late 2013, Costa withdrew his ownership for what Merrill characterized as "legal reasons."

346. Furthermore, TelexFree entities use the same website and back office support, merely providing identical information in multiple languages.

347. Perhaps most telling, both Merrill and Wanzeler testified to transferring at least $3,000,000.00 to Costa long after Brazilian authorities shut down Ympactus operations.

348. Over two years of operations, TelexFree has employed multiple financial accounts, including domestic and international bank accounts and various online payment processors, to facilitate the fraudulent offer or sale of securities in the Commonwealth of Massachusetts.

- 47 -

[10235-01/1302119_2.doc]

349.    Almost all financial institutions have terminated their relationship with TelexFree after only a few months of business.

350.    Recently, frantic emails between TelexFree management and financial institutions paint an entirely bleak picture of continuing TelexFree financial operations.

351.    TelexFree operations have become a risk that financial institutions are no longer willing to bear.

352.    As described by one financial institution, "[n]o US Bank or Processor . . . will accept your [TelexFree] business given that you are on month five of the Visa Chargeback monitoring program.  You are one of only three merchants in the USA on month five so you are a real hot-potato as they say."

353.    Recently, on March 9, 2014, TelexFree management made several changes to its once wildly popular Passive Income Scheme.

354.    A central component of the new changes affect the ease of participant withdrawals.

355.    TelexFree participants are no longer able to withdraw money, even money already "earned," without making a specified number of retail sales and recruiting a number of new investors.

356.    Certain TelexFree participants have frantically contacted the Division suspecting that these changes are the harbinger of TelexFree's collapse.

357.    Not only is it now more difficult to withdraw money from TelexFree, TelexFree has also switched its compensation plan from one that pays participants in dollars to one that operates on TelexFree "credits."

358.    These credits appear to be nothing more than IOUs.  To this end, on April 14, 2014, TelexFree filed for Chapter 11 bankruptcy protection in Nevada.

**M.    DISK A VONTAD**

359.    Disk a Vontade is operated out of a Massachusetts post office box.  TelexFree and Disk a Vontade share key management and prior to their activities as described herein, they shared Brazil as a target market.

- 48 -

360.    Disk a Vontade's domain ("discavontade.com") is registered to Defendant Carlos Wanzeler.

361.    Defendant James Merrill has attended Disk a Vontade events including those held in Brazil.

**N.    TELEXFREE ELECTRIC**

362.    Defendants Merrill and Wanzeler are the general partners of TelexElectric.

363.    TelexFree Electric received a fraudulent $2,022,329.00 "loan" from TelexFree following the closure of TelexFree Brazil by the Brazilian Courts.

**O.    TELEXFREE MOBILE**

364.    TelexFree Mobile received a fraudulent $500,870 "loan" from TelexFree.

**P    DOE INSIDER PROMOTERS**

365.    Although they remain unknown to the Putative Class Representatives and will remain unknown until discovery has been exchanged, certain promoters were provided with inside information by Defendants and in fact acted as agents servants of the Defendants.

366.    The Putative Class Representatives seek to obtain damages, restitution and injunctive relief for the Class, as defined, below, from Defendants.

## CLASS ACTION ALLEGATIONS

367.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated ("the Class"). The Class that Plaintiffs seek to represent is:

> All persons who tendered funds to TelexFree between 1/1/2012 and April 15, 2014 and who did not recoup the amount of money they originally invested. Excluded from the Class are the Defendants and their officers, directors, and employees of Defendant; any entity in which Defendant have a controlling interest; the co conspirators, so called insider promoters, legal representatives, attorneys, heirs, and assigns of the Defendants.

368.    Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a) because the members of the Class are so numerous that the joinder of all members is impractical.

While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, it is in the hundreds of thousands.

369.   Plaintiffs meet the requirements of Federal Rules of Civil Procedures 23(a) because there is a well-defined community of interest among the members of the Class, common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

370.   This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because it involves questions of law and fact common to the member of the Class that predominate or any questions affecting only individual members, including, but not limited to:

a.   Whether the contract under which TelexFree claims to invoke the application of Nevada law is illegal and unenforceable as a matter of law.

b.   Whether the contract under which TelexFree claims to invoke the application of Nevada law is otherwise void and unenforceable as a matter of law.

c.   Whether TelexFree ran a Pyramid Ponzi Scheme;

d.   Whether TelexFree ran a lawful Multi-Level Marketing program;

e.   Whether TelexFree offered and sold securities in the form of unregistered investment contracts constituting securities.

f.   Whether the other Defendants aided and abetted TelexFree in the sale of unregistered securities in violation of the law;

g.   Whether Defendant Officers, Doe Inside Promoters, Doe Paralegal, Banks, Payment Processing Services Companies, Retained Licensed Professionals knew that TelexFree was an illegal pyramid-type Ponzi scheme which involved the illegal sale of securities, continued to aid, abet and further such illegal activities or are otherwise liable for the economic loss suffered by the Putative Class.

h.   Whether TelexFree's financial services providers, including the aforesaid banking institutions and payment processing services providers, knowingly

[10235-01/1302119_2.doc

aided and abetted TelexFree's Pyramid Ponzi Scheme

i.      Whether Massachusetts Blue Sky Laws will apply to the claims of the Putative Class;

j.      Whether TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, in connection with the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of, *inter alia,* the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A.

k.      Whether TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

l.      Whether Defendant's violated Section 1965 of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1965];

m.      Whether TelexFree mailed fraudulent and inaccurate 1099 (Miscellaneous Income) forms to investors;

n.      Whether the 1099 (Miscellaneous Income) forms should be declared void as a matter of law or otherwise because they were provided long after the mandated January 31, 2014 deadline, and some after the April 15, 2014 filing deadline.

o.      Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

- 51 -

371.    Plaintiffs' claims are typical of those of other Class members because Plaintiffs' information, like that of every other class member, was misused and/or disclosed by Target.

372.    Plaintiffs will fairly and accurately represent the interests of the Class.

373.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Target and would lead to repetitive adjudication of common questions of law and fact. Accordingly, class treatment is superior to any other method for adjudicating the controversy. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

374.    Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Target's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

375.    Target has acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

## **FIRST CLAIM FOR RELIEF**

### **(FOR VIOLATIONS OF SECTION 10(B) OF THE SECURITIES AND EXCHANGE ACT OF 1934 AND SECURITIES AND EXCHANGE COMMISSION RULE 10B-5 -AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, AND OTHERS)**

376.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 -375 as if fully restated herein.

377.    During the class period, Defendants, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a scheme and a continuous course of conduct to make materially false and misleading statements about the TelexFree investment dealings, financial condition and operations and to conceal adverse material information about these investments.

. . .

[10235-01/1302119_2.doc

378.    Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and courses of conduct, as alleged herein, including the following: (1) making or participating in the making of untrue statements of material facts; (2) omitting to state the material facts necessary to make the statements about the investments not misleading; and (3) engaging in transactions, practices, and a course of business which operated as a fraud and deceit upon investors during the Class Period.

379.    Each of the said Defendants offered and sold securities by means of fraudulent misrepresentations and intentional omissions of material facts concerning the securities.

380.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.    Such misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

381.    Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.    Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

382.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

383.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, without the knowledge and complicity of Defendants.

384.    As a result of the dissemination of materially false and misleading information and the failure to disclose material facts, as set forth above, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

[10235-01/1302119_2.doc

385. In ignorance of the materially false and misleading nature of the reports and statements described above, Plaintiffs and the other Class members relied, to their detriment, on Defendants for complete and accurate information about these investments.

386. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10 b-5 promulgated thereunder, and Plaintiffs and the Class have been damaged thereby, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (FOR VIOLATIONS OF SECTION 20(A) OF THE SECURITIES AND EXCHANGE ACT 1934 AND SECTION 15 OF THE SECURITIES ACT OF 1933 AGAINST DEFENDANTS MERILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, WAAK, NEHRA, LAW OFFICES OF NEHRA AND WAAK, AND GERALD P. NEHRA, ATTORNEY AT LAW, PLLC)

387. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 386 as if as fully restated herein.

388. At the time of the wrongs alleged herein, Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC, were each a controlling person of TelexFree within the meaning of Section 20(a) of the Exchange Act.

389. By reason of their respective positions of authority, Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC had the power and authority to influence and control, and did influence and control, the decision-making and activities of TelexFree and the affiliated TelexFree Entities and caused them to engage in the wrongful conduct described herein. Defendants, Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC, exercised control to cause the dissemination of false and misleading statements and omissions of material facts.

390. Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC also

- 54 -

materially aided in the sale of TelexFree AdCentral packages, which constitute securities, by actively promoting such

391.    By virtue of their positions as controlling persons, and as a result of the aforementioned conduct, Defendants are liable under Section 20(a) of the Exchange Act.

### THIRD CLAIM FOR RELIEF

**(FOR VIOLATIONS OF SECTIONS 5 AND 12(A)(L) OF THE SECURITIES ACT OF 1933 AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, AND OTHERS)**

392.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 – 391 as if fully restated.

393.    The Securities Act prohibits sale or delivery after sale of an unregistered security.

394.    Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others failed to file a true Registration Statement for TelexFree under the 1933 Act.

395.    A Registration Statement must include the following: (1) the entity's properties and business, (2) a full description of the offered security, (3) information about the management of the entity, and (4) a financial statement certified by an independent auditor.  None of these were provided.

396.    By omitting this information, Defendants filed a false Form D.

397.    Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, , the Insider Promoter Does and others also did not apply for or receive an exemption under Regulation D.

398.    Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others failed to provide to Plaintiffs access to the information that they were required to provide, including audited financial statements.

399.    Plaintiffs purchased these securities without knowledge of the failure of Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others to file the required Registration Statement or receive an exemption therefrom.

400.    Plaintiffs would not have purchased the securities if Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others provided the information required in a Registration Statement.

401.    By virtue of the foregoing, Plaintiffs have been damaged and are entitled to damages, including rescission, and other relief for violations by Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others of Sections 5 and 12(a)(1) of the Securities Act of 1933 alleged herein.

**FOURTH CLAIM FOR RELIEF**

**(FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT OF 1933 AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, WAAK, NEHRA, LAW OFFICES OF NEHRA AND WAAK, AND GERALD P. NEHRA, ATTORNEY AT LAW, PLLC)**

402.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 401 as if fully restated herein.

403.    During the class period, Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC, fraudulently failed to convey facts material to the TelexFree AdCentral investment packages by failing to produce and file a Registration Statement.

404.    In particular, the said Defendants intentionally avoided the requirement to produce a Registration Statement, and intentionally avoided disclosing that the AdCentral packages were, in fact, investments, and that financial returns on the AdCentral investments were derived from the proceeds received from the purchase of such investments, and not from the sale of the VoIP product.

405.    Said Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein.

406.    Such misrepresentations and/or omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

[10235-01/1302119_2.doc]

407.    Said Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

408.    Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

409.    Said Defendants knew and recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

410.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time without the knowledge and complicity of the Defendants.

411.    As a result of failure to disclose material facts, as set forth above, including their failure to file the requisite registration material, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

412.    By virtue of the foregoing, said Defendants have violated Section 11 of the Securities Act, and Plaintiffs and the Class have been damaged thereby, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (FOR VIOLATIONS OF SECTION 12(A)(2) OF THE SECURITIES ACT OF 1933 AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, AND OTHERS)

413.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 412 as if fully restated herein.

414.    Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others participated in the sale of securities to Plaintiffs that were unregistered and not exempt from registration.

415.    At the time of their investments, Plaintiffs had no knowledge that the investments offered by Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others were subject to registration requirements.

- 57 -

416.    In fact, Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others knew or reasonably should have known that the TelexFree Agreement Contract and investment scheme was subject to the registration requirement of the Securities Act.

417.    Both the Telex Contract and related materials distributed to Plaintiffs and the oral communications with Plaintiffs contained material omissions and misstatements.

418.    Plaintiffs had no knowledge of the falsity of these statements or of the material omissions in the written materials including, but not limited to, Monthly Accounting Statements prepared by the accounting Defendants and other misrepresentations made by Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others as described above. Plaintiffs reasonably believed such statements were true.

419.    Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others knew, or in the exercise of reasonable diligence, should have known, of the untruths and omissions.

420.    Plaintiffs would not have purchased the securities if they had this knowledge.

421.    As a result of these investments, Plaintiffs have been damaged.

422.    Plaintiffs are entitled to rescind their purchases and recover the value of their interest in TelexFree.  Plaintiffs seek rescission of their purchase of membership interests in TelexFree.

## SIXTH CLAIM FOR RELIEF

### (FOR VIOLATIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 110A, SECTION 410(A) AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, RODRIGUES, DE LA ROSA, CROSBY, AND SLOAN)

423.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 422 as if fully restated herein.

424.    During the Class Period, Defendants Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, the Insider Promoter Does and others offered and sold securities to the

- 58 -

Plaintiffs by means of a scheme and a continuous course of conduct to make materially false and misleading statements about the TelexFree investment dealings, financial condition and operations and to conceal adverse material information about these investments.

425.    Said Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and courses of conduct, as alleged herein, including the following: (1) making or participating in the making of untrue statements of material facts; (2) omitting to state the material facts necessary to make the statements about the investments not misleading; and (3) engaging in transactions, practices, and a course of business which operated as a fraud and deceit upon investors during the Class Period.

426.    Each of the said Defendants offered and sold securities by means of fraudulent misrepresentations and intentional omissions of material facts concerning the securities.

427.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

428.    Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.   Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

429.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

430.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time without the knowledge and complicity of the said Defendants.

[10235-01/1302119_2.doc]

431. As a result of the dissemination of materially false and misleading information and the failure to disclose material facts, as set forth above, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

432. In ignorance of the materially false and misleading nature of the reports and statements described above, Plaintiffs and the other Class members relied, to their detriment, on Defendants for complete and accurate information about these investments.

433. By virtue of the foregoing, Defendants have violated Section 410(a) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, and Plaintiffs have been damaged thereby, in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (FOR VIOLATIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 110A, SECTION 410(B) AGAINST DEFENDANTS MERILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, LAW OFFICES OF NEHRA AND WAAK, AND GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, AND OTHERS)

434. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 434 as if as fully restated herein.

435. At the time of the wrongs alleged herein, Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and others were each a controlling person, partner, officer, director, person occupying a similar status, or employee materially aiding in the sale of securities, of TelexFree within the meaning of Section 410(b) of the Massachusetts Uniform Securities Act, M.G.L. c. 110A.

436. By reason of their respective positions of authority, Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and others had the power and authority to influence and control, and did influence and control, the decision-making and activities of TelexFree and the affiliated TelexFree entities and caused them to engage in the wrongful conduct described herein. Defendants Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices

[10235-01/1302119_2.doc]

of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC exercised control to cause the dissemination of false and misleading statements and omissions of material facts.

437.    By virtue of their positions as controlling person and top-level promoters, and as a result of the aforementioned conduct, Defendants are liable under Section 20(a) of the Exchange Act.

438.    Plaintiffs seek the award of actual damages on behalf of the Class.

## EIGHTH CLAIM FOR RELIEF

## (NEGLIGENCE AGAINST ALL DEFENDANTS)

439.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 438 as if fully restated herein.

440.    At all times material herein, Defendants owned a duty to Plaintiffs to act with a level of care to avoid misstating TelexFree's financial information or its returns; and to comply with all applicable laws concerning TelexFree, including, without limitation, federal and state securities laws.

441.    By virtue of misstating and omitting relevant financial information, including the returns to Promoter/Investors, TelexFree breached its duty of care owed to Plaintiffs, the Putative Class Plaintiffs and similarly situated Plaintiffs.

442.    As a direct and proximate result of Defendants' negligence and carelessness, Plaintiffs, the Putative Class Plaintiffs and similarly situated Plaintiffs have been caused to suffer and sustain damages and losses.

## NINTH CLAIM FOR RELIEF

## (NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS TELEXFREE, MERILL, WANZELER, LABRIOLA, COSTA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, LAW OFFICES OF NEHRA AND WAAK, AND GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, RODRIGUES, DE LA ROSA, CROSBY, AND SLOAN)

443.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 442 as if fully restated herein.

444.    Defendants, TelexFree, Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and

others, directly and through their agents, servants, employees and/or representatives, did negligently make false representations of material fact to the said Plaintiffs, with said misrepresentations being made for the purpose of obtaining and/or wrongfully appropriating and converting money from Plaintiffs.

445.    Said Defendants made negligent representations although Defendants knew, or should have known, that such representations were false.

446.    Said representations and statements were material and were relied upon by the said Plaintiffs, inducing them to furnish money to Defendants.

447.    In consequence of said reliance on the negligent misrepresentations, the said Plaintiffs have suffered great financial losses, and have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

## TENTH CLAIM FOR RELIEF

### (INTENTIONAL MISREPRESENTATION AGAINST DEFENDANTS TELEXFREE, MERILL, WANZELER, LABRIOLA, COSTA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND OTHERS)

448.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 447 as if fully restated herein.

449.    Defendants TelexFree, Merill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, Rodrigues, and others directly and through their agents, servants, employees and/or representatives, did intentionally make false representations of material fact to the said Plaintiffs with said misrepresentations being made for the purpose of obtaining and/or wrongfully appropriating and converting money from Plaintiffs. ]

450.    Defendants made said intentional misrepresentations although Defendants knew that such representations were false.

451.    Said representations and statements were material and were relied upon by the said Plaintiffs, inducing them to furnish money to Defendants.

- 62 -

452.    In consequence of said reliance on the intentional misrepresentations, the said Plaintiffs have suffered great financial losses, and have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

## ELEVENTH CLAIM FOR RELIEF

### (PROFESSIONAL MALPRACTICE AGAINST DEFENDANTS CRAFT, CRAFT FINANCIAL, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND RICHARD W. WAAK, ATTORNEY AT LAW, PLLC)

453.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 452 as if fully restated herein.

454.    At all times material herein, Defendant Craft, Craft Financial, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, were the providers of professional accounting and legal services.

455.    The said Defendants had a duty to perform these services in conformance with the skill and knowledge normally possessed by members of the accounting and legal professions, using good, known, and accepted customs and practices of the these professions.

456.    The said Defendants breached their duty to Plaintiffs by negligently certifying and representing to Plaintiffs and the public that the business model and operations of TelexFree were legal, proper, and economically viable and sustainable, when in fact TelexFree's business model and operations constituted an illegal and unsustainable Ponzi scheme.

457.    The said Defendants further failed to exercise proper due diligence in the discharge of their investigatory duties as certified public accountants and attorneys of TelexFree.

458.    Furthermore, Defendants Craft and Craft Financial negligently failed to ensure that TelexFree maintained proper accounting records.

459.    As a result of the professional negligence of said Defendants, Plaintiffs and the public were misled to belief that TelexFree were legal, proper, and economically viable and sustainable.

460.    As a direct and proximate consequence of the aforementioned negligence of the said Defendants, Plaintiffs sustained injuries and losses.

**TWELFTH CLAIM FOR RELIEF**

**(BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS TELEXFREE, MERILL, WANZELER, LABRIOLA, COSTA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND RICHARD W. WAAK, ATTORNEY AT LAW, PLLC)**

461.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 460 as if fully restated herein.

462.    Defendants TelexFree, Merill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC and others owe to Plaintiffs, a duty of utmost good faith and fair dealing.

463.    The said Defendants violated their duty by actively misrepresenting and fraudulently failing to convey facts material to the TelexFree AdCentral investment packages, including:

(a)    Providing false and misleading information as to the nature of TelexFree business operation;

(b)    Misrepresenting the financial statements;

(c)    Providing false and misleading information as to the value of the AdCentral Package;

(d)    Providing false and misleading information as to the method and source from which income was derived;

(e)    Providing false and misleading information as to the legality of TelexFree's business model;

(f)    Providing false and misleading information as to the sustainability of the returns to Promoter/Investors;

(g)    Providing false and misleading information regarding the investigation in Brazil and subsequent closure of TeleFree's Brazilian operations,

(h)    Knowingly participating in false and deceptive information televised over the internet and other media;

(i)    Concealing the fact that the AdCentral Packages were actually securities;

(j)    Failing to comply with federal and state securities laws; and

(k)    Employing legal and accountant counsel to mask their illegal and fraudulent activities in an effort to further and perpetuate such illegal fraudulent activities.

- 64 -

464.    Said Defendants had actual knowledge of the fraudulent and deceptive misrepresentations and omissions of material facts set forth herein.

465.    Such misrepresentations and/or omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

466.    Said Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

467.    Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

468.    Said Defendants knew and recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

469.    Said Defendants, through the aforesaid fraudulent and deceptive misrepresentations and omissions of material facts, breached their fiduciary duties of care and loyalty to Plaintiffs.

470.    As a result of the foregoing breach of fiduciary duty by Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

## THIRTEENTH CLAIM FOR RELIEF

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS TELEXFREE, MERILL, WANZELER, LABRIOLA, COSTA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND RICHARD W. WAAK, ATTORNEY AT LAW, PLLC AND OTHERS)

471.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 470 as if fully restated herein.

[10235-01/1302119_2.doc]

472.    Defendants owed to Plaintiffs a duty of utmost good faith and fair dealing, and thereby were obligated to consider the welfare of Plaintiffs and refrain from acting for purely selfish motives or private gain.

473.    Defendants violated their duty by actively misrepresenting and fraudulently failing to convey facts material to the TelexFree AdCentral investment packages, including:

(a)    Providing false and misleading information as to the nature of TelexFree business operation;

(b)    Misrepresenting the financial statements;

(c)    Providing false and misleading information as to the value of the AdCentral Package;

(d)    Providing false and misleading information as to the method and source from which income was derived;

(e)    Providing false and misleading information as to the legality of TelexFree's business model;

(f)    Providing false and misleading information as to the sustainability of the returns to Promoter/Investors;

(g)    Providing false and misleading information regarding the investigation in Brazil and subsequent closure of TelexFree's Brazilian operations,

(h)    Knowingly participating in false and deceptive information televised over the internet and other media;

(i)    Concealing the fact that the AdCentral Packages were actually securities;

(j)    Failing to comply with federal and state securities laws; and

(k)    Employing legal and accountant counsel to mask their illegal and fraudulent activities in an effort to further and perpetuate such illegal fraudulent activities.

474.    Said Defendants had actual knowledge of the fraudulent and deceptive misrepresentations and omissions of material facts set forth herein.

475.    Such misrepresentations and/or omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

476.    Said Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the

materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

477.    Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

478.    Said Defendants knew and recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

479.    Said Defendants, through the aforesaid fraudulent and deceptive misrepresentations and omissions of material facts, breached their covenant of good faith and fair dealing owed to the Plaintiffs.

480.    As a result of the foregoing breach of the covenant of good faith and fair dealing by Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

## FOURTEENTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, AND OTHERS)

481.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 481 as if fully restated herein.

482.    Plaintiffs furnished funds, directly or indirectly, to Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Costa, and others, which funds were accepted by Defendants without protest or defect.

483.    Said Defendants have unlawfully and in bad faith denied Plaintiffs access to such funds, and have instead retained the benefit of such funds for themselves.

484.    As a direct and proximate result of the foregoing actions of Defendants, as hereinabove set forth, the said Defendants are, and continue to be, unjustly enriched.

. . .

. . .

. . .

. . .

[10235-01/1302119_2.doc

## FIFTEENTH CLAIM FOR RELIEF

### (FRAUD AGAINST DEFENDANTS TELEXFREE, MERILL, WANZELER, LABRIOLA, COSTA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND RICHARD W. WAAK, ATTORNEY AT LAW, PLLC, RODRIGUES, DE LA ROSA, CROSBY, AND SLOAN)

485.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 484 as if fully restated herein.

486.    Defendants TelexFree, Merill, Wanzeler, Labriola, Costa, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC and Richard W. Waak, Attorney at Law, PLLC, and others fraudently misrepresented and intentionally failed to convey to Plaintiffs facts material to the TelexFree AdCentral investment packages.

487.    Said Defendants' fraudulent misrepresentations and omissions include, *inter alia*:

(a)    Providing false and misleading information as to the nature of TelexFree business operation;

(b)    Misrepresenting the financial statements;

(c)    Providing false and misleading information as to the value of the AdCentral Package;

(d)    Providing false and misleading information as to the method and source from which income was derived;

(e)    Providing false and misleading information as to the legality of TelexFree's business model;

(f)    Providing false and misleading information as to the sustainability of the returns to Promoter/Investors;

(g)    Providing false and misleading information regarding the investigation in Brazil and subsequent closure of TelexFree's Brazilian operations,

(h)    Knowingly participating in false and deceptive information televised over the internet and other media;

(i)    Concealing the fact that the AdCentral Packages were actually securities;

- 68 -

(j)    Failing to comply with federal and state securities laws; and

(k)    Employing legal and accountant counsel to mask their illegal and fraudulent activities in an effort to further and perpetuate such illegal fraudulent activities.

488.    Defendants had actual knowledge of the fraudulent and deceptive misrepresentations and omissions of material facts set forth herein.

489.    Such misrepresentations and/or omissions were done knowingly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

490.    Defendants received information reflecting the true facts regarding the investment and TelexFree's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.

491.    Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

492.    Defendants knew and recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to Investors.

493.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, without the knowledge and complicity of Defendants.

494.    As a result of the foregoing fraud perpetrated by Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

## SIXTEENTH CLAIM FOR RELIEF

### (AIDING AND ABETTING FRAUD AGAINST DEFENDANTS MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, TD BANK, CITIZENS FINANCIAL, CITIZENS BANK, FIDELITY BANK, MIDDLESEX SAVINGS, GPG, IPS, PROPAY AND THE DOE DEFENDANTS)

495.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 494 as if fully restated herein.

- 69 -

496.    Defendants Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, WAAK, Nehra, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, ProPay and the Doe defendants actively and substantially assisted in the commission of the TelexFree fraud.

497.    Defendants rendered such substantial assistance despite their knowledge that TelexFree's operations constituted an illegal and unsustainable pyramid Ponzi scheme and financial fraud.

498.    Such substantial assistance rendered by said Defendants despite their knowledge of the fraudulent nature of TelexFree's operations, include, *inter alia*:

    (a)    Managing and controlling TelexFree and its affiliated entities;

    (b)    Providing accounting services to TelexFree;

    (c)    Providing legal services to TelexFree;

    (d)    Publicly certifying that TelexFree's business model and operations were legal, proper, and economically viable and sustainable;

    (e)    Providing banking services for TelexFree and its management;

    (f)    Promoting TelexFree AdCentral packages;

    (g)    Processing payments to, from, and on behalf of TelexFree and its affiliated entities; and

    (h)    Process payments for transfers of funds which deepened TelexFree's insolvency.

499.    As a direct and proximate result of TelexFree's fraud, to which the said Defendants provided substantial assistance, Plaintiffs sustained damages and losses.

## SEVENTEENTH CLAIM FOR RELIEF

**(COMMON LAW FRAUDULENT TRANSFER AGAINST DEFENDANTS TELEXFREE, TELEXELECTRIC, TELEX MOBILE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, TD BANK, CITIZENS FINANCIAL, CITIZENS BANK, FIDELITY BANK, MIDDLESEX SAVINGS, GPG, IPS, PROPAY AND THE DOE DEFENDANTS)**

500.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 -499 as if fully restated herein.

- 70 -

501.   Plaintiffs, at all times material herein, were and are creditors of Defendant TelexFree.

502.   Defendants Merrill, Wanzeler, Labriola, Craft, Costa, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, ProPay, and the Doe Defendants have knowingly made or accepted transfers of funds owed to Plaintiffs.

503.   Such transfers were made or accepted with intent to hinder, delay, and/or defraud Plaintiffs.

504.   More particularly, such transfers were made in an attempt to dissipate, convert and conceal funds that are lawfully due to Plaintiffs.

505.   As a result of such fraudulent transfers, Plaintiffs have suffered, or will imminently suffer, damages and losses.

**EIGHTEENTH CLAIM FOR RELIEF**

**(DEEPENING INSOLVENCY AGAINST DEFENDANTS TELEXFREE, TELEXELECTRIC, TELEX MOBILE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA, TD BANK, CITIZENS FINANCIAL, CITIZENS BANK, FIDELITY BANK, MIDDLESEX SAVINGS, GPG, IPS, PROPAY AND THE DOE DEFENDANTS)**

506.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 505 as if fully restated herein.

507.   Plaintiffs, at all times material herein, were and are creditors of Defendant, TelexFree.

508.   Defendants, Merrill, Wanzeler, Labriola, Craft, Costa, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, ProPay and the Doe Defendants have knowingly made or accepted transfers of funds owed to Plaintiffs, which transfers deepened TelexFree's insolvency.

509.   Such transfers were made in an attempt to dissipate, convert and conceal funds that are lawfully due to Plaintiffs.

510.   Such transfers have greatly decreased the probable extent of recovery by Plaintiff creditors.

[10235-01/1302119_2.doc

511.   As a result of such fraudulent transfers, Plaintiffs have suffered, or will imminently suffer, damages and losses.

**NINETEENTH CLAIM FOR RELIEF**

**(CIVIL CONSPIRACY AGAINST DEFENDANTS TELEXFREE, TELEXELECTRIC, TELEX MOBILE, MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, WAAK, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC AND RICHARD W. WAAK, ATTORNEY AT LAW, PLLC)**

512.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 511 as if fully restated herein.

513.   Defendants have combined to enter into a civil conspiracy, for an unlawful purpose and using unlawful means, with the intent of so combining to unlawfully defraud Plaintiffs out of funds.

514.   In consequence of the foregoing, Plaintiffs sustained damages and losses.

**TWENTIETH CLAIM FOR RELIEF**

**(CONVERSION AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, COSTA AND OTHERS)**

515.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 514 as if fully restated herein.

516.   Defendants have unlawfully converted Plaintiffs' funds, by obtaining the same through knowing misrepresentations made to Plaintiffs and the public.

517.   Defendants continue to retain funds unlawfully converted from Plaintiffs.

518.   In consequence of the foregoing, Plaintiffs sustained damages and losses.

**TWENTY-FIRST CLAIM FOR RELIEF**

**(FOR VIOLATIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 93A, SECTION 2 AGAINST DEFENDANTS TELEXFREE, TELEXELECTRIC, TELEX MOBILE, MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, RICHARD W. WAAK, ATTORNEY AT LAW, PLLC, TD BANK, CITIZENS FINANCIAL, CITIZENS BANK, FIDELITY BANK, MIDDLESEX SAVINGS, GPG, IPS, PROPAY)**

519.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 -518 as if fully restated herein.

- 72 -

520.    At all times material herein, Defendants, TelexFree, TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, Richard W. Waak, Attorney at Law, PLLC, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, ProPay, and the Does were engaged in Trade and Commerce as defined by Massachusetts General Laws Chapter 93A, Section 1.

521.    At all times material herein, Plaintiffs were engaged in Trade and Commerce as defined by Massachusetts General Laws Chapter 93A, Section 1.

522.    The foregoing transactions, actions and inactions of the said Defendants constitute unfair and deceptive acts and practices as defined by, and in violation of, Massachusetts General Laws, Chapter 93A § 11.

523.    In consequence of the said Defendants' unfair and deceptive acts and practices, Plaintiffs have suffered great financial losses, and have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

## TWENTY-SECOND CLAIM FOR RELIEF

**(FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, UNITED STATES CODE, TITLE 18, SECTION 1962 AGAINST DEFENDANTS TELEXFREE, TELEXELECTRIC, TELEX MOBILE, MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, NEHRA, WAAK, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC, RICHARD W. WAAK, ATTORNEY AT LAW, PLLC, TD BANK, CITIZENS FINANCIAL, CITIZENS BANK, FIDELITY BANK, MIDDLESEX SAVINGS, GPG, IPS, PROPAY AND THE DOE DEFENDANTS)**

524.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 523 as if fully restated herein.

525.    At all times material herein, Defendants TelexFree, TelexElectric, Telex Mobile, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Nehra, Waak, Law Offices of Nehra and Waak, Gerald P. Nehra, Attorney at Law, PLLC, and Richard W. Waak, Attorney at Law, PLLC, TD Bank, Citizens Financial, Citizens Bank, Fidelity Bank, Middlesex Savings, GPG, IPS, ProPay and the Doe defendants were associated in an enterprise as defined by 18 U.S.C. 1961(4).

- 73 -

526. Such enterprise was engaged in unlawful and illegal activities, including, *inter alia*, securities fraud and financial fraud, as set forth more fully throughout this Complaint, and which made use of the means and instrumentalities of interstate commerce and which crossed jurisdictional lines.

527. Throughout their involvement with such enterprise, the said Defendants engaged in a pattern of securities fraud, financial fraud, and other illegal and wrongful behavior, comprising numerous instances of such illegal and wrongful behavior.

528. Such illegal and wrongful behavior constitutes "racketeering activity" as defined by 18 U.S.C. 1961(1).

529. The said Defendants were aware of the illegal and fraudulent nature of the enterprise.

530. The said Defendants each actively participated in the enterprise and its pattern of racketeering activity.

531. The said Defendants each received income, directly or indirectly, as a result of the enterprise and its pattern of racketeering activity.

532. The said Defendants did further conspire to engage in such pattern of racketeering activity.

533. In consequence of the said Defendants' unlawful enterprise and pattern of racketeering activity Plaintiffs have suffered great financial losses, and have also incurred considerable expenses and loss of income, and have otherwise been greatly damaged.

## <u>TWENTY-THIRD CLAIM FOR RELIEF</u>

**<u>(FOR VIOLATIONS OF THE LANHAM ACT, UNITED STATES CODE, TITLE 15, SECTION 1125 AGAINST DEFENDANTS TELEXFREE, MERRILL, WANZELER, LABRIOLA, CRAFT, CRAFT FINANCIAL, COSTA, WAAK, NEHRA, LAW OFFICES OF NEHRA AND WAAK, GERALD P. NEHRA, ATTORNEY AT LAW, PLLC)</u>**

534. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 534 as if fully restated herein.

- 74 -

535.    As set forth more particularly throughout this Complaint, and in direct violation of the Lanham Act, 15 U.S.C. § 1125, the Defendants TelexFree, Merrill, Wanzeler, Labriola, Craft, Craft Financial, Costa, Waak, Nehra, Law Offices of Nehra and Waak, and Gerald P. Nehra, Attorney at Law, PLLC have used false or misleading descriptions of material fact, and false and/or misleading representation of material fact, in promoting and selling TelexFree's AdCentral investment packages and VoIP products.

536.    In so doing, Defendants made use of the means and instrumentalities of interstate commerce and crossed jurisdictional lines.

537.    Said Defendants have also used false and/or misleading descriptions of material fact, and false or misleading representations of material fact, in characterizing the nature of TelexFree's business operations, returns on investment, and the legality of the investments.

538.    Said Defendants' false and/or misleading descriptions of material fact, and false or misleading representations of material fact, did actually deceive, or have the tendency to deceive, both Plaintiffs and the public.

539.    As direct and proximate result of the false and misleading advertisements disseminated by Defendants, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

## **CONCLUSION**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

1.    Declaring this action to be a Class Action properly maintained pursuant to the Federal Rules of Civil Procedure and certifying Plaintiffs as the class representatives;

2.    Awarding Plaintiffs and Class members rescission and/or compensatory damages against Defendants for all damages sustained as a result of their wrongdoing, in an amount to be proven at trial, including interest;

3.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

[10235-01/1302119_2.doc]

4. For an award of punitive damages;

5. For an award of costs of suit and attorneys' fees, as allowable by law;

6. For an award of interest;

7. For the appointment of a receiver selected by Class Counsel and an accounting; and

8. For an award to Plaintiffs and the Class such other and further relief as may be just and proper under the circumstances including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of their claims to the extent authorized by law.

Respectfully submitted,

Dated this 3rd day of May, 2014.

**COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON**

_____
Richard F. Holley, Esq.
Nevada Bar No. 3077
Ogonna M. Atamoh, Esq.
Nevada Bar No. 7589
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**BOSIGNORE, LLC**

Robert J. Bosignore, Esq. (*Pro Hac Pending*)
New Hampshire Bar No. 21241
193 Plummer Hill Road
Belmont, New Hampshire 03220

*Attorneys for Waldemara Martin and Leandro Valentim – putative claims representatives and those similarly situated*

[10235-01/1302119_2.doc]