| | | |
|---|---|---|
| 1 | Richard F. Holley, Esq. (NV Bar No. 3077)<br>Email: rholley@nevadafirm.com | E-filed on: May 5, 2014 |
| 2 | Ogonna M. Atamoh, Esq. (NV Bar No.7589)<br>Email: oatamoh@nevadafirm.com | Robert J. Bonsignore, Esq.<br>(NH Bar No. 21241) *Pro Hac* |
| 3 | COTTON, DRIGGS, WALCH,<br>HOLLEY, WOLOSON & THOMPSON | Email: rbonsignore@classaction.us<br>BONSIGNORE, LLC |
| 4 | 400 South Fourth Street, Third Floor<br>Las Vegas, Nevada 89101 | 193 Plummer Hill Road<br>Belmont, New Hampshire 03220 |
| 5 | Telephone:    702/791-0308<br>Facsimile:     702/791-1912 | Telephone:     781/856-7650 |
| 6 7 | *Attorneys for Waldemara Martin and Leandro Valentim – putative claims representatives and those similarly situated* | |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| 10 | In re: | Case No. BK-S-14-12524-ABL<br>Chapter 11 |
| 11 | TELEXFREE, LLC, | |
| 12 | Debtor. | |
| 13 | WALDEMARA MARTIN AND LEANDRO VALENTIM – PUTATIVE CLAIMS | Adv. No. BK-S-14-01083-ABL |
| 14 | REPRESENTATIVES AND THOSE SIMILARLY SITUATED, | **RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE** |
| 15 | Plaintiff, | |
| 16 | v. | **MOTION TO WITHDRAW THE REFERENCE FOR ADVERSARY** |
| 17 | CARLOS COSTA; TELEXFREE, INC., f/k/a | **PROCEEDING NO. 14-01083-ABL AND SUPPORTING MEMORANDUM OF LAW** |
| 18 | COMMON CENTS COMMUNICATIONS, INC.; TELEXFREE, LLC; TELEXFREE | |
| 19 | FINANCIAL, INC.; TELEXELECTRIC, LLLP; TELEX MOBILE, HOLDINGS, INC.; JAMES | |
| 20 | M. MERRILL; CARLOS N. WANZELER; STEVEN M. LABRIOLA; JOSEPH H. CRAFT, | |
| 21 | a/k/a JOE H. CRAFT; CRAFT FINANCIAL SOLUTIONS, LLC; GERALD P. NEHRA, | |
| 22 | individually and doing business as LAW OFFICES OF NERHA AND WAAK; GERALD | |
| 23 | P. NEHRA ATTORNEY AT LAW, PLLC; RICHARD W. WAAK, individually and doing | |
| 24 | business as LAW OFFICES OF NERHA AND WAAK; RICHARD W. WAAK, ATTORNEY | |
| 25 | AT LAW, PLLC; TD BANK, NA; CITIZENS FINANCIAL GROUP, INC.; CITIZENS BANK | |
| 26 | OF MASSACHUSETTS; FIDELITY CO-OPERATIVE BANK, doing business as | |
| 27 | FIDELITY BANK; MIDDLESEX SAVINGS BANK; GLOBAL PAYROLL GATEWAY | |
| 28 | INC.; INTERNATIONAL PAYOUT SYSTEMS | |

10235-01/1303717.doc

INC.; PROPAY, INC., doing business as PROPAY.COM,; and PARALEGAL DOE,

Defendants.

## RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE

## MOTION TO WITHDRAW THE REFERENCE FOR ADVERSARY PROCEEDING NO. 14-01083-ABL AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, Putative Class Representatives WALDEMARA MARTINS and LEANDRO VALENTIM, on behalf of themselves and all others similarly situated (hereafter "Plaintiffs"), by and through their undersigned counsel, move pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011 to withdraw the reference of Adversary Proceeding No. 14-01083-ABL from the United States Bankruptcy Court for the District of Nevada,[1] in connection with the class action adversary case filed against class action against Defendants TELEXFREE, INC., f/k/a COMMON CENTS COMMUNICATIONS, INC., TELEXFREE, LLC, TELEXFREE FINANCIAL, INC., TELEXELECTRIC, LLLP, TELEX MOBILE, HOLDINGS, INC., (collectively referred to herein as "TelexFree").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Withdrawal of the reference is governed by 28 U.S.C. § 157. In this case, withdrawal is mandatory because resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. Plaintiffs' claims alleged in the Complaint (defined below) arise under the Securities and Exchange Act of 1934, the Securities and Exchange Commission Rules, and the Securities Act of 1933, violations of Massachusetts general laws under Chapter 110A, Section 410(A) and Chapter 93A, Section 2, negligence, negligent misrepresentation, intentional misrepresentation,

---

[1] Pursuant to Local Rule 5011, this Motion is being filed with the Clerk for the Bankruptcy Court. Plaintiffs are filing contemporaneously with this Motion a Designation of the Record pursuant to Local Rule 5011(d). Accordingly, when the record for this Motion is complete, Plaintiffs respectfully request that the Clerk transmit the appropriate documents to the United States District Court for the District of Nevada. L.R. 5011(e).

- 2 -

10235-01/1303717.doc

professional malpractice, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unjust enrichment, fraud, aiding and abetting fraud, common law fraudulent transfer, deepening insolvency, civil conspiracy, conversion, violations of the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, violations of the Lanham Act, United States Code, Title 15, Section 1125. Most, if not all, of the claims alleged in the Complaint do not constitute core claims. With the exception of defendant TelexFree ("Debtor"), all of the other defendants named in the Complaint are non-debtor individuals or entities. The adversary case is therefore properly subject to withdrawal pursuant to the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

To the extent that withdrawal is not mandatory, permissive withdrawal is nonetheless appropriate in this case. Judicial efficiency is advanced by immediate withdrawal. Plaintiff has demanded a jury trial and does not consent to a jury trial in the Bankruptcy Court. Pursuant to 28 U.S.C. § 157(e), Bankruptcy Court may conduct a jury trial only with consent of all parties. Moreover, Defendants include a number of non-debtor individuals and entities.

## II. RELEVANT FACTS

### BACKGROUND

TelexFree uniformly held itself out as a "multi-level marketing" company systematically selling local and international telephone service plans that use "voice over internet protocol" ("VoIP") technology through so-called "Promoters."[2] The TelexFree VoIP was not patented or proprietary, and offered nothing more than what was otherwise available for free through other Internet providers. For example, Skype.

In the Complaint, Plaintiffs allege that TelexFree's offer and sale of investment contracts constituted a pyramid-type Ponzi scheme (the "Pyramid Ponzi Scheme"). In the Complaint, Plaintiffs further alleged that to carry out their unlawful enterprise, TelexFree and their officers, agents, servants and employees sold fraudulent unregistered securities to the Putative Class Representatives and to the members of the class the Representatives seek to represent. Telexfree

---

[2] Merriam-Webster's Dictionary defines a "promoter" as a person or organization that helps something to happen, develop, or increase.

10235-01/1303717.doc

sold unregistered securities in twenty-one states and internationally from its offices in Marlborough, Massachusetts.[3]

As set forth in the Complaint, TelexFree maintained a post office box in an unnamed mini mart and smoke shop located in a strip mall in Las Vegas, Nevada. Plaintiffs alleged in the Complaint that at all relevant times, TelexFree maintained no sales force or sales support in Nevada.

Plaintiffs further assert in the Complaint that the contract under which TelexFree claims to invoke the application of Nevada law is illegal and void as a matter of law. TelexFree's unregistered securities were deceptively and uniformly identified to all members of the putative class as "memberships." TelexFree guaranteed returns of 200% or more per year. In exchange for copying and placing duplicative and pre-written TelexFree ads on internet sites – a passive process that alone generates no revenue and requires essentially no effort on the part of the investors – and for recruiting other investors to pay the membership fees, TelexFree held out that its investors, or "Promoters," could receive significant returns of over 200% annually.

TelexFree uniformly and systematically did not require Promoters to sell its VoIP product in order to qualify for payments prior to March 9, 2014. TelexFree's scheme constitutes an unlawful pyramid scheme because the proceeds from the sale of TelexFree's VoIP product alone could not sustain the massive pay structure. To keep TelexFree's Pyramid Ponzi Scheme liquid, a constant influx of new participants paying "membership fees" was required.

On June 19, 2013, the Brazilian Court in Acre issued an injunction putting "a stop to TelexFree's business operations, including the registration of new affiliate investors, acceptance of new investments and paying any returns owed on existing affiliate investments."[4] According to the Complaint, at all relevant times, TelexFree and its Officers James M. Merrill, Carlos N. Wanzeler, Steven M. Labriola, Carlos Costa, Joseph H. Craft, a/k/a Joe H. Craft (collectively, "Defendant Officers"), the Doe Insider Promoters, the Doe Paralegal, TelexFree's Retained

---

[3] Because all sales were processed through their Massachusetts office, Massachusetts state law applies including MGL 110A, Sec. 410, MGL. 110A, Sec. 410(b) and MGL 93A.

[4] Brazillian Court Suspends TelexFree's Operations, Behind MLM (June 20, 2013). http://behindmlm.com/companies/telexfree/brazilian-court-suspends-telexfree-operations/.

- 4 -

10235-01/1303717.doc

Licensed Professionals[5], and Payment Processing Services Companies[6] knew that the Pyramid Ponzi Scheme was not sustainable, and that the representations on Telefree's website and in its marketing materials were false, unfair, and deceptive including, but not limited to, those concerning the guaranteed returns.

At all relevant times as averred in the Complaint, TelexFree and its Defendant Officers, the Doe Inside Promoters, Paralegal Doe, its banks, and its Retained Licensed Professionals knew that TelexFree was selling unregistered securities to the members of the putative classes and each participated in the advancement of the fraud. After the shut down in Brazil the Defendant Officers, Doe Inside Promoters, Doe Paralegal, Banks, Payment Processing Services Companies, Retained Licensed Professionals knew that TelexFree was an illegal pyramid-type Ponzi scheme which involved the illegal sale of securities, yet they targeted a United States based market from their Marlborough Massachusetts world head quarters and continued to aid, abet and further such illegal activities.

According to the Complaint, despite the extensive knowledge that they were running a Pyramid type Ponzi scheme including first hand knowledge of the judicial findings in Brazil, TelexFree and the other Defendants continued to participate in the attraction and processing of new investors, continued to allow payments to process through TelexFree's accounts, allowed TelexFree to continue to illegally sell securities and further its illegal Pyramid Ponzi Scheme, and otherwise continued to further TelexFree's illegal activities.

**BANKRUPTCY**

On April 14, 2014, the Defendants TelexFree, Inc., TelexFree, LLC and TelexFree Financial, Inc. filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, District of Nevada, pending as Case No. BK-S-14-12524-ABL (the "Bankruptcy").

---

[5] Attorneys Gerald P Nehra, Esq, individually and doing business as the Law Offices of Nehra and Waak; Gerald P Nehra, Attorney at Law, PLLC; Richard W. Waak individually and doing business as the Law Offices of Nehra and Waak; Richard W. Waak Attorney at Law, PLLC; Joe H. Craft individually and d/b/a as Certified Public Accountant; Craft Financial Solutions, LLC as well as the Defendant Banks are referred to herein as "Retained Licensed Professionals" or "RLP."

[6] Global Payroll Gateway Inc., International Payout Systems, Inc., and Propay, Inc., doing business as PROPAY.COM, are referred to herein as "Payment Process Services Companies" or "PPSC."

- 5 -

10235-01/1303717.doc

**ADVERSARY COMPLAINT**

On May 3, 2013, Plaintiffs commenced a class action complaint ("Complaint") for, *inter alia*, violations of state and federal securities law. In the Complaint, Plaintiffs allege that at all relevant times Defendants violated the antifraud and securities registration provisions of the federal and state securities laws. Plaintiffs further allege in the Complaint that from at least in or about January 2012 through approximately April 15, 2014, TelexFree and the other Defendants unlawfully, willfully and knowingly used the means and instrumentalities of interstate commerce and the mails, directly and indirectly, in connection with the purchase and sale of unregistered securities.

In the Complaint, Plaintiffs allege TelexFree and the other Defendants used and employed manipulative and deceptive devices and contrivances in violation of MGL 110A, Sec. 410; used means and instrumentalities, directly and indirectly, in connection with the purchase and sale of unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of, *inter alia,* the Massachusetts Uniform Securities Act, MGL c. 110A, Section 410b, MGL 110A, Sec. 410(b) and MGL 93A. According to the Complaint, TelexFree and the other Defendants also violated Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

As set forth in the Complaint, TelexFree and the other Defendants willfully or knowingly established a pyramid-type Ponzi scheme by paying certain investors purported returns on investment. Plaintiffs allege that TelexFree made use of this sophisticated pyramid scheme, and defrauded the members of the putative class out of funds exceeding $300,000,000.00 dollars in just a few short years. Pursuant to the Complaint, certain Defendants share joint and severable liability, including its Officers, Doe Inside Promoters, the licensed professionals such as the RLP Defendants, including certified public accountants and lawyers that specialized in sheltering so-

called Multi-Level Marketing schemes for having aided and abetted TelexFree's Pyramid Ponzi Scheme by providing TelexFree with legal and financial advice and assistance during the course of the fraud, despite knowledge of the fraudulent nature of TelexFree's operation.

Plaintiffs further alleged that the Payment Processing Services Companies and bank Defendants also share joint and several liability having aided and abetted the fraudulent and illegal activity by providing financial and payment processing services, while also having knowledge of TelexFree's fraud. In the Complaint, Plaintiffs seek compensation for economic loss sustained as a result of Defendants' conduct in carrying out an unlawful Ponzi pyramid scheme that included, *inter alia*, Defendants' fraudulent unregistered offer and sale of securities in the form of unregistered investment contracts constituting securities.

Specifically, Plaintiffs' Claims for Relief sound in violations of: (i) Section 10(B) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10B-5; (ii) Section 20(A) of the Securities and Exchange Act of 1934 and Section 15 of the Securities Act of 1933.

### III. LEGAL ARGUMENT

Withdrawal of the reference is required under 28 U.S.C. § 157 and governing Supreme Court and Ninth Circuit precedent. Even if such withdrawal were discretionary, all of the factors courts consider in deciding a motion to withdraw heavily favor withdrawal here. Finally, judicial efficiency compels withdrawal, because none of the Plaintiffs' claims can be finally adjudicated by the Bankruptcy Court.

**A.    Mandatory Withdrawal of the Reference.**

District Courts have original jurisdiction over all cases under the Bankruptcy Code and may refer to Bankruptcy Judges any case arising under Title 11. See 28 U.S.C. §§ 157(a), 1334(b). The District Court also has the power to withdraw the reference of a case or proceeding from the Bankruptcy Court. 28 U.S.C. § 157(d). Under the provision requiring mandatory withdrawal of the reference under Section 157, the district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires

10235-01/1303717.doc

- 7 -

consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. See 28 U.S.C. § 157(d).

Specifically, the second sentence of section 157(d) requires that the reference be withdrawn if the proceeding which was referred under section 157(a) "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." See Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.), 56 B.R. 999 (D.N.J. 1986) (disagreeing with the contrary conclusion reached in *In re White Motor Corp.*, 42 B.R. 693, 699-701 (N.D. Ohio 1984)). According to Collier on Bankruptcy, perhaps Congress had in mind that district judges, who consider certain types of matters on a daily basis, are better equipped to determine them than are bankruptcy judges, whose knowledge of and expertise with respect to civil proceedings involving the labor laws or securities laws, for example, may have been. Sullivan v. Hiser (In re St. Mary Hosp.), 115 B.R. 495 (E.D. Pa. 1990); Judge v. Ribley & Schweigert (In re Leedy Mortgage Co.), 62 B.R. 303 (E.D. Pa. 1986).

The appropriate rule of construction of section 157(d) should combine the "substantial and material" rule with a requirement that interpretation of both the Code and non-Code federal statute be required for resolution of the controversy.[7] See American Tel. & Tel. Co. v.

---

[7] An initial reading of the second sentence discloses that there are two prerequisites to mandatory withdrawal. The first is that resolution of the civil proceeding requires "consideration ... of title 11." See 1-3 Collier on Bankruptcy P 3.04 (16th ed. Rev. 2014). The second is that resolution of the civil proceeding requires "consideration ... of other laws of the United States regulating organizations or activities affecting interstate commerce." Id. Another way of saying this is that the sentence dealing with mandatory withdrawal contains the words "both" and "and." The same statutory requirements apply when the reference is withdrawn *sua sponte*. Id. (citing South Street Seaport Ltd. P'ship v. Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996)). However, many cases have ignored the language of the statute and have found that withdrawal does not depend upon the presence of a title 11 issue at all but instead that the sole requirement for mandatory withdrawal is that resolution of the dispute will require a "substantial and material consideration of" the non-Code statute and when that statute has more than a *de minimus* effect on interstate commerce. Id. By way of illustration, in *Michigan Milk Producers Association v. Hunter*, 46 B.R. 214 (N.D. Ohio 1985), a trustee filed antitrust counterclaims in response to a complaint filed by a secured creditor seeking determination of its rights. The district court withdrew the reference, finding that resolution of the proceeding will "require substantial and material consideration of [the] federal antitrust claim." Id. at 216.

In *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949 (7th Cir. 1996), the Panel held that withdrawal is mandatory when the case requires the "substantial and material consideration" of the non-Code federal law, concluding that "mandatory withdrawal is required only when [the non-title 11] issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." Id.; see also Shugrue v. Air Line Pilots Ass'n, Int'l (*In re* Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990); United States v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 222 (D.N.J. 2003) (issues of first impression under certain provisions of Internal Revenue Code); Revere Copper &

- 8 -

Chateaugay Corp., 88 B.R. 581 (S.D.N.Y. 1988); Carter Day Indus., Inc. v. United States Envtl. Protection Agency (In re Combustion Equip. Assocs., Inc.), 67 B.R. 709 (S.D.N.Y. 1986), which according to Collier on Bankruptcy, such a result would certainly be in accord with the clear meaning rule laid down by the Supreme Court in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989).

In the present case, the SEC claims, claims arising under the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, and claims arising under violations of the Lanham Act, United States Code, Title 15, Section 1125, as set forth in the Complaint are subject to mandatory withdrawal under the second sentence of 28 U.S.C. § 157(d). Mandatory withdrawal is appropriate for these federal claims for two reasons. First, the resolution of these issues will require a "substantial and material consideration of" the non-Code statutes, where the SEC, Racketeering and Lanham Act statutes at issue here have more than a de minimus effect on interstate commerce. Second, interpretation of both the Code and non-Code federal statutes are necessary for resolution of the controversy. Thus, cause exists for mandatory withdrawal based upon the nature of the claims for relief alleged in the Complaint.

**B.     Withdrawal of the Reference Is also Appropriate Where a Jury Trial Demand has Been Made, but the Parties do not all Consent to the Bankruptcy Court Conducting the Jury Trial.**

Under 28 U.S.C. § 157(e), the Bankruptcy Court lacks the authority to conduct a jury trial on a referred matter absent "the express consent of all the parties." Id.; see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 563, 569 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 2880 (2013); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1194 (9th Cir. 2003) ("[T]he bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court."); Taxel v. Elec. Sports Research (In re Cinematronics, Inc.), 916 F.2d 1444, 1451 (9th Cir. 1990) (same). Accordingly, where there is a jury trial demand and the parties do not unanimously consent to a jury trial in the Bankruptcy Court, the District Court is required to withdraw the reference.

─────────────────────────────── (continued)
Brass, Inc. v. Acushnet Co. (In re Revere Copper & Brass, Inc.), 169 B.R. 87 (S.D.N.Y. 1994).

10235-01/1303717.doc

Here, withdrawal is appropriate because Plaintiffs have demanded a jury trial. Plaintiffs have brought "non-core claims" arising from the securities claims, claims arising under Massachusetts law, and claims for negligence, negligent misrepresentation, intentional misrepresentation, professional malpractice, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unjust enrichment, fraud, aiding and abetting fraud, common law fraudulent transfer, deepening insolvency, civil conspiracy, conversion, violations of the Racketeer Influenced and Corrupt Organizations Act, United States Code, Title 18, Section 1962, violations of the Lanham Act, United States Code, Title 15, Section 1125. See Complaint. Most, if not all, of Plaintiffs' claims are non-core securities and tort claims. Id. Plaintiffs seek a jury trial, but do not consent to the Bankruptcy Court presiding over the jury trial, and do not consent to the entry of any final orders by the Bankruptcy Court. Thus, to the extent any of the claims alleged in the Complaint are deemed core claims, such claims likewise cannot be tried by the Bankruptcy Court under governing Supreme Court and Ninth Circuit precedent. Accordingly, the Bankruptcy Court lacks the authority to finally adjudicate this case, and the District Court should withdraw the reference for trial and all pretrial proceedings, as set forth in greater detail below.

C. **Alternatively, to the Extent Mandatory Withdrawal is not Applicable, Permissive Withdrawal of the Reference Is Appropriate**

The reference may also be withdrawn for cause pursuant to 28 U.S.C. § 157(d), which provides that the "district court may withdraw, in whole or in part, any case or proceeding referred . . . on its own motion or on timely motion of any party, for cause shown."

Courts consider several factors to determine whether a reference should be withdrawn for cause: "[(1)] efficient use of judicial resources (which is enhanced [by withdrawal] when non-core issues predominate), [(2)] delay and costs to the parties, [(3)] uniformity of bankruptcy administration, [(4)] the prevention of forum shopping, and other related factors." Herbst Gaming, Inc. v. Insurcorp (In re Zante, Inc.), No. 3:10-cv-231-RJC-RAM, 2010 WL 5477768, at *4 (D. Nev. Dec. 29, 2010) (quoting Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008 (9th Cir. 1997)); see also Orion Pictures Corp. v.

10235-01/1303717.doc

Showtime Network, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1100–01 (2d Cir. 1993) (listing same factors). Courts also consider whether the claims at issue are non-core and whether there will be a jury trial. See Heller Small Bus. Lending Corp. v. Smead (In re O'Hanneson), Nos. 5:12-cv-04068 EJD, 12-53343 ASW, 2013 WL 655158, at *4 (N.D. Cal. Feb. 21, 2013). All of these factors weigh in favor of withdrawal in this case.

### 1. Judicial efficiency favors withdrawal of the reference.

Judicial efficiency favors withdrawal of the reference in this case, because the Bankruptcy Court lacks the authority to finally adjudicate this case, so any proceedings in the bankruptcy court will necessarily require additional proceedings, including *de novo* review, in the District Court. Withdrawal will avoid such duplicative proceedings.

#### a. The Bankruptcy Court lacks the authority to finally adjudicate this matter.

The Bankruptcy Court lacks the authority to finally adjudicate any of the claims in this case. Thus, the goal of judicial efficiency is furthered by proceeding in the District Court in the first instance, rather than requiring re-litigation and review of non-final Bankruptcy Court proposed findings.

First, as discussed above, the Bankruptcy Court cannot conduct a jury trial in this case. This weighs in favor of withdrawal because the case ultimately must be tried in the District Court. See, e.g., In re Cinematronics, Inc., 916 F.2d at 1451 (agreeing with "several courts [that] have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate").

Second, the Bankruptcy Court lacks the power to enter final judgments on any of the Plaintiffs' claims. Instead, it may only enter proposed findings of fact and conclusions of law that are subject to *de novo* review by the District Court. This limitation is firmly established as to Plaintiffs' non-core claims.[8] See 28 U.S.C. § 157(c). It also applies to any of the claims deemed core claims, following the Supreme Court's holding in *Stern v. Marshall*, 131 S. Ct.

---

[8] The Plaintiffs' non-core claims include the SEC, Racketeering, Lanham Act and tort claims.

2594 (2011). In <u>Stern</u>, the Court held that Article III prohibits Bankruptcy Courts from entering final judgments on certain core claims. See <u>Stern v. Marshall</u>, 131 S. Ct. at 2608 (counterclaim against estate under 28 U.S.C. § 157(b)(2)(C)). The Ninth Circuit has held that <u>Stern</u> applies to claims for fraudulent transfer (Seventeenth Claim for Relief), thus prohibiting the Bankruptcy Court from entering final judgment on such claims without the consent of the parties. See <u>In re Bellingham Ins. Agency, Inc.</u>, 702 F.3d at 561–62 (discussing <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), and <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989)). Under the same limitations governing non-core claims, the Bankruptcy Court can only issue proposed findings on the Plaintiffs' fraudulent transfer claim that are subject to *de novo* review by the District Court. <u>Id.</u> at 565–66.

Numerous cases have recognized that this inefficient process—which requires two courts to invest themselves in one case and forces the parties to litigate matters twice—can and should be avoided by withdrawing the reference and proceeding with the case in District Court. <u>See, e.g.</u>, <u>Sec. Farms</u>, 124 F.3d at 1009 ("unnecessary costs could be avoided by a single proceeding in the district court"); <u>In re Orion Pictures Corp.</u>, 4 F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court"); <u>Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP</u>, 462 B.R. 457, 469, 472 (S.D.N.Y. 2011) ("It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated"); <u>Coe-Truman Techs., Inc. v. United States (In re Coe-Truman Techs., Inc.)</u>, 214 B.R. 183, 187 (N.D. Ill. 1997) (because bankruptcy court's decision is subject to *de novo* review, it is more efficient for district court to decide case in the first instance). Conducting pre-trial matters in the District Court will avoid such inefficiency.[9]

---

[9] The inefficiencies posed by this process could be further amplified in this case in light of the Supreme Court's grant of *certiorari* in the *Bellingham* case on June 24, 2013. <u>Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)</u>, 133 S. Ct. 2880 (2013). Based on the questions presented by the parties, the Supreme Court's decision will address a Circuit split as to whether the Bankruptcy Court has statutory authority to enter proposed findings of fact and conclusions of law on core claims. <u>Compare</u> <u>In re Bellingham Ins. Agency</u>, 702 F.3d at 565 (Bankruptcy Court may issue report and recommendation on core claim), <u>with</u> <u>Ortiz v. Aurora Health</u>

10235-01/1303717.doc

### b. Withdrawal is efficient because it permits the District Court to become familiar with facts before presiding over trial.

Judicial efficiency is also served by allowing the District Court to conduct the pretrial proceedings, and thus familiarize itself with the facts, when it will ultimately preside over the trial. See, e.g., Midway Venture, Inc. v. Gladstone (In re Pacers, Inc.), No. 11-cv-1401-L BGS, 2012 WL 947956, at *4 (S.D. Cal. Mar. 20, 2012); CM Capital Servs., LLC v. Stewart Title of Nev., No. 2:10-CV-317-JCM (LRL), 2010 WL 4606523, at *2 (D. Nev. Nov. 5, 2010) (Mahan, J.); Wellman Thermal Sys. Corp. v. Columbia Cas. Co., No. 105CV-01191-JDT-TAB, 2005 WL 4880619, at *3 (S.D. Ind. Oct. 5, 2005) ("efficiencies would be lost were the bankruptcy court to proceed with pretrial matters; the district court would not gain a valuable familiarity with the case that could assist it leading up to and through trial"); In re Coe-Truman Techs., Inc., 214 B.R. at 187; Zahn v. Yucaipa Capital Fund (In re Almac's, Inc.), 202 B.R. 648, 659 (D.R.I. 1996). This factor applies in this case because the District Court will preside over the jury trial, and due to the complexity of the litigation sounding in SEC and tort claims, and the class action nature of the action, judicial efficiency is best served by withdrawal of the reference.

### 2. Withdrawal will prevent delay and reduce costs.

Withdrawing the reference will prevent delay and reduce costs. All of the parties will be saved the cost and delay of having to re-litigate decisions by the Bankruptcy Court on *de novo* review in the District Court. See Sec. Farms, 124 F.3d at 1008–09; In re Zante, Inc., 2010 WL 5477768, at *7. Moreover, the parties will be spared the duplicative costs of familiarizing the District Court with the extensive facts of this case after familiarizing the Bankruptcy Court with the same matters.

---

(continued)
Care, Inc. (In re Ortiz), 665 F.3d 906, 915 (7th Cir. 2011) (Bankruptcy Court may not issue report and recommendation on core claim); see also Petition for Writ of Certiorari, In re Bellingham Ins. Agency, Inc., No. 12-1200, 2013 WL 1329527 (U.S. Apr. 3, 2013). Should the Supreme Court reverse *Bellingham* and adopt the Seventh Circuit's reasoning, the validity of any proposed findings issued by the Bankruptcy Court on the core claim would be uncertain and possibly subject to challenge.

10235-01/1303717.doc

### 3. Withdrawal will not interfere with the uniform application of bankruptcy administration.

Withdrawal of the adversary proceeding will not interfere with the uniformity of bankruptcy administration. Plaintiffs' non-core claims, including the SEC and tort claims, as well as the claims arising under Massachusetts state law, do not implicate issues of bankruptcy law, and these non-bankruptcy claims predominate in this litigation. See Sec. Farms, 124 F.3d at 1008; In re Zante, Inc., 2010 WL 5477768, at *6–7 (uniformity of bankruptcy administration is not undermined by withdrawal of adversary case in which eight out of nine causes of action were non-core). Further, under governing Ninth Circuit precedent, only the District Court can render a final judgment on Plaintiffs' core claims. See In re Bellingham Ins. Agency, 702 F.3d at 565.

### 4. Judicial Efficiency Is Best Served by the District Court Conducting All Pretrial Activity.

For the same reasons that the reference should be withdrawn, the District Court should conduct all pre-trial matters in this case. The District Court will have to preside over this action because Plaintiffs demanded a jury trial on all claims and Plaintiffs do not consent to a trial in the Bankruptcy Court. Although the Court has discretion to delay withdrawal until *de novo* review or trial is required, see Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 787–88 (9th Cir. 2007), the District Court's familiarity with the substance of this matter strongly weigh in favor of the District Court conducting pre-trial matters itself. See Boyd v. GMAC Mortg. LLC, No. C 11-5018 PSG, 2012 WL 1424992, at *2 (N.D. Cal. Apr. 24, 2012) (finding that reference to Bankruptcy Court for pre-trial proceedings was not "in the interest of judicial economy"); Dev. Specialists, 462 B.R. at 472 (recognizing efficiencies gained from conducting pre-trial proceedings in District Court). In contrast, there would be no benefit to having pretrial proceedings in related cases bifurcated between two different courts.

As recognized by the court in *Development Specialists*,

> Because the Bankruptcy Court is not able to finally determine these proceedings without the consent of the [defendants]—which does not appear to be forthcoming—any recommendations it makes will need to be reviewed *de novo* in this Court. It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated [in the district court].

10235-01/1303717.doc

462 B.R. at 472; see Boyd v. GMAC Mortg. LLC, No. C 11-5018 PSG, 2012 WL 1424992, at *2 (N.D. Cal. Apr. 24, 2012) (having bankruptcy court resolve all pretrial matters and then report on case status to district court is waste of judicial resources and should be avoided).

By allowing the District Court to oversee all of the litigation, the District Court will be able to streamline issues and discovery. See Heller Small Bus. Lending Corp. v. Smead (In re O'Hanneson), Nos. 5:12-cv-04068 EJD, 12-53343 ASW, 2013 WL 655158, at *4 (N.D. Cal. Feb. 21, 2013); In re Pilgrim's Pride Corp., 415 B.R. at 637; In re Comdisco, Inc., 2004 WL 2674398, at *2.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the District Court withdraw the reference in this adversary proceeding and that the District Court conduct all judicial proceedings up to and through trial.

Dated this 5th day of May, 2014.

COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON

/s/ Richard F. Holley

Richard F. Holley, Esq.
Nevada Bar No. 3077
Ogonna M. Atamoh, Esq.
Nevada Bar No. 7589
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

**BONSIGNORE, LLC**

Robert J. Bonsignore, Esq. (*Pro Hac*)
New Hampshire Bar No. 21241
193 Plummer Hill Road
Belmont, New Hampshire 03220

*Attorneys for Waldemara Martin and Leandro Valentim – putative claims representatives and those similarly situated*

10235-01/1303717.doc

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Cotton, Driggs, Walch, Holley, Woloson & Thompson, and that on the 5th day of May, 2014, I caused to be served a true and correct copy of MOTION TO WITHDRAW THE REFERENCE FOR ADVERSARY PROCEEDING NO. 14-01083-ABL AND SUPPORTING MEMORANDUM OF LAW in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed below, at their last known mailing addresses, on the date above written:

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

/s/ *signature*
An employee of Cotton, Driggs, Walch, Holley, Woloson & Thompson